OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
On April 20, 1979, plaintiff, president and majority shareholder of Westwood Paper & Hardware Company, Inc., a closely held corporation in the business of wholesale marketing of hardware and paper products since 1955, and Edward Sarraf (the other Westwood shareholder) sold their shares to Sinclair Distributors, Inc., a no-asset corporation organized to buy Westwood. The individual defendants — appellants on this appeal — are the officers, directors and shareholders of Sinclair. The terms of the sale are contained in three agreements executed on April 20, 1979 by Sinclair: a purchase agreement, fixing a price of $200,000 — $40,000 down and $160,000 payable in monthly installments over four years; a promissory note, permitting acceleration in the event of nonpayment; and a pledge agreement, pledging the Westwood stock as security for payment. The pledge agreement further granted plaintiff the right to inspect Westwood’s property and records; provided for written notice to him of corporate action; and in the case of any default allowed him to vote the Westwood shares and call a special shareholders’ meeting to replace defendants as directors. Moreover, under the pledge agreement all distributions accruing to Sinclair from the Westwood shares were to be held in trust and applied against the next installment, and specifi *771 cally not to be paid to defendants Murphy, Quagliata, "their relatives or any shareholder of Sinclair, or its successors or affiliates.”
In approximately a year Westwood was in bankruptcy. Payments on the note had ceased, plaintiff accelerated the debt, and he commenced the present litigation against Sinclair, Westwood and the individual defendants. After trial, at which only one of the three individual defendants even appeared, Supreme Court awarded plaintiff compensatory as well as punitive damages and attorneys’ fees, concluding that defendants were guilty of fraud and misrepresentations both in the formation and in the operation of the business. With respect to the individuals particularly, the trial court found that, as fiduciaries, they had breached the pledge agreement by receiving distributions of corporate assets, and by failing and refusing to allow plaintiff access to books and records, or notify him of corporate action. The court additionally concluded that the individuals had, by fraud and misrepresentations as to their competence and integrity, induced plaintiff to enter into the agreements. The Appellate Division remitted for a new trial as to attorneys’ fees, and it concluded that fraud in the inducement had not been established, but otherwise affirmed the judgment (97 AD2d 668). After retrial the Appellate Division affirmed the judgment (125 AD2d 884), and this court granted leave to appeal.
While both courts sustained liability against the individual defendants by piercing the corporate veil, we need not and do not reach that issue, because of the independent basis found for recovery against them.
The individual defendants do not dispute that they owed plaintiff a fiduciary duty, as directors, to protect his continuing ownership interest in the stock of Westwood (see also, Business Corporation Law § 717; Alpert v Williams St. Corp., 63 NY2d 557; Matter of Cohen v Cocoline Prods., 309 NY 119, 123). Further, there are affirmed findings of fact supported by the record, that the individuals breached their fiduciary duty to plaintiff in several respects, such as by failing to notify him of certain corporate action and by repeated wrongful diversion of corporate assets to themselves and others. The corporate entity cannot shelter individuals from responsibility for breaches of duty of care they may independently owe as directors (see, Abrams v Allen, 297 NY 52, 55-56). Nor, on this record of wantonly negligent, even reckless conduct, can defendants’ acts be justified as falling within the business judg *772 ment rule (compare, New York Credit Men’s Adj. Bur. v Weiss, 305 NY 1 and Sautter v Fulmer, 258 NY 107, with Auerbach v Bennett, 47 NY2d 619).
The award of punitive damages similarly should be sustained. The trial court in extensive findings and conclusions of law characterized defendants’ conduct as out-and-out fraud, and while the Appellate Division in certain respects modified those findings, it determined that defendants’ operation of the business "amounted, at least, to willful or wanton negligence” and to "a wanton or reckless disregard of plaintiff’s rights,” and that they were "grossly negligent and reckless.” (97 AD2d 668, 670, 671, supra.) Under these circumstances we cannot say that the lower courts erred in allowing punitive damages in this case (see, Nardelli v Stamberg, 44 NY2d 500, 503).
Nor can we accept defendants’ argument that the punitive damages award must be overturned because there was no harm aimed at the public generally. Punitive damages are allowable in tort cases such as this so long as the very high threshold of moral culpability is satisfied (see, e.g., Welch v Mr. Christmas, 57 NY2d 143, 150; Cleghorn v New York Cent. & Hudson Riv. R. R. Co., 56 NY 44, 48; see also, Whitney v Citibank, 782 F2d 1106) — as it is here on the established findings of defendants’ wrongful diversion and squandering of corporate assets, granting of excessive credit, payments of salaries to themselves, and other acts constituting willful, wanton and reckless misconduct.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs, in a memorandum.