**Gerald M. BLANK, Plaintiff,**

v.

**Walter J. BARONOWSKI, John Coleman, Jr., Thomas E. Keating, Barcol Group, Ltd., BDS Securities Corp., Kevin J. McCabe, Capital Management of Bermuda (Holdings) Ltd., f/k/a Asset Holdings (Bermuda) Corp., Ltd., Capital Management of Bermuda, Ltd., f/k/a The Travelers Corporation of Bermuda Limited, The High View Fund, L.P., and RavensRock Capital, Defendants.**

**No. 96 Civil 3675 (SAS).**

United States District Court,
S.D. New York.

March 11, 1997.

Ira N. Glauber, Jaffe & Asher, New York City, for Plaintiff.

Blair C. Fensterstock, Brock, Fensterstock & Silverstein, New York City, Thomas J. Hall, Chadbourne & Park, L.L.P., New York

City, Roger L. Waldman, Moses & Singer, L.L.P., New York City, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendants move pursuant to Rule 12(b)(6) to dismiss plaintiff's claims for failure to state a claim upon which relief may be granted.[1] For the reasons that follow, defendants' motions are denied.

### I. Applicable Legal Standard

In deciding a Rule 12(b)(6) motion, the court must accept as true material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). Such a motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint, as "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)), *cert. denied,* — U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996)) (internal quotation marks omitted). Rather, dismissal can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

### II. Procedural and Factual Background

#### A. Procedural Background

Plaintiff's original Complaint was filed on May 16, 1996. Defendants moved to dismiss this Complaint pursuant to Rule 12(b)(6) on September 6, 1996. After a telephone conference with the Court, defendants agreed to withdraw their motions to dismiss in order to allow plaintiff an opportunity amend his complaint by including certain factual allegations that had been set forth in affidavits but not the original Complaint. At the time, I suggested to defendants that allowing plaintiff to amend his original Complaint in that manner might obviate the need to re-submit motions to dismiss. Nevertheless, after plaintiff filed a First Amended Complaint on September 31, 1996, defendants moved once again to dismiss pursuant to Rule 12(b)(6).

#### B. The Defendants

Applying the above legal principles, the facts set forth in the First Amended Complaint are presumed true for the purposes of deciding defendants' motions to dismiss. I begin with a brief description of the defendants to this action. Barcol Group, Ltd. ("Barcol") is a New York corporation owned and directed by Walter J. Baronowski ("Baronowski") and John Coleman, Jr. ("Coleman"). BDS Securities Corporation ("BDS") is also a New York corporation, and Kevin J. McCabe ("McCabe") was president of BDS during all times relevant to this action. Capital Management of Bermuda (Holdings) Ltd. ("CMH") and Capital Management of Bermuda, Ltd. ("CM") are Bermuda corporations whose principal places of business are in New York. Baronowski is President of CMH and CM, and Coleman and Thomas E. Keating ("Keating") are officers of CMH and CM. RavensRock Capital ("RavensRock") and The High View Fund, L.P. ("High View") are equity investors in the acquisition of The Travelers Corporation of Bermuda, Ltd. ("TCB") whose principal places of business are located in New York. *See* First Amended Complaint, at ¶¶ 2–11.

CMH was formed as a vehicle for the acquisition of TCB. CM was the company that was acquired, being previously known as TCB. When CMH acquired TCB it did so with capital raised by BDS in New York. RavensRock and High View contributed capital to further the acquisition of TCB. CM and CMH have subsequently taken over business previously conducted by Barcol. *See id.* ¶¶ 9, 10, 22–24.

---

1. All defendants except BDS Securities Corp. were initially represented by Chadbourne & Parke, L.L.P. and submitted a joint Memorandum in Support of Motion to Dismiss. Subse-

quently, some of these defendants retained their own counsel and submitted separate Reply Memoranda.

### C. The Joint Venture Agreement and Acquisition of TCB

In October of 1994, plaintiff entered into an oral joint venture agreement with defendants Baronowski, Coleman and Keating to acquire an off-shore insurance company then known as TCB.[2] It was agreed that plaintiff would have the same equity interest in the venture as Coleman and Keating (9% of the acquired company's stock) and the same salary as Coleman ($180,000)[3]. *See id.*, at ¶¶ 12–13, 47–48.

In connection with the joint venture agreement, plaintiff loaned Baronowski, Coleman and Keating more than $120,000 for use in the TCB acquisition. *Id.* at ¶ 63. Plaintiff also hired an actuarial firm to perform a due diligence examination of TCB at a cost of $46,200, and provided a variety of services to the joint venture, such as structuring the terms of the proposed transaction and traveling to Bermuda and Hartford on behalf of the joint venture.

Unbeknownst to plaintiff, defendants Baronowski, Coleman and Keating began negotiations with defendant BDS and defendant McCabe during the final stages of the TCB acquisition. At all relevant times, BDS, McCabe, RavensRock, High View, Barcol, CMH and CM were aware of the existence of the joint venture agreement among plaintiff and Baronowski, Coleman and Keating to acquire TCB. *See id.* at ¶ 94. On December 7, 1995, plaintiff wrote to BDS and McCabe to warn them against tortiously interfering with plaintiff's contractual rights. Despite this warning, Baronowski, Coleman, Keating, Barcol, CM and CMH, acting with BDS and McCabe as well as RavensRock and High View acquired TCB without plaintiff. *See id.* at ¶¶ 57–59. Plaintiff did not receive a 9% equity stake or a salary of $180,000 after the acquisition of TCB. Instead, he alleges, defendants kept the promised equity stake, salary and loans totaling $166,200 for themselves.

## III. Discussion

The First Amended Complaint sets forth eleven claims[4], which are discussed below with respect to each defendant.

### A. First Claim: Breach of Joint Venture Agreement (against Defendants Baronowski, Coleman and Keating)

■ Defendants Keating and Coleman move to dismiss the First claim on the ground that they are not alleged to have been present when plaintiff and Baronowski formed the joint venture agreement, and thus cannot be parties to that contract as a matter of law. Plaintiff alleges that Keating and Coleman were parties to the joint venture agreement by virtue of Baronowski's representation at the time of formation, *see* First Amended Complaint at ¶ 30 (alleging that Baronowski stated that Coleman and Keating were parties to the joint venture agreement), and by virtue of their subsequent conduct which is alleged to have recognized the existence of that joint venture agreement, *see id.* at ¶¶ 34–35, 43, 49 (Keating) and 41–42, 44, 50, 52–53 (Coleman).

Keating and Coleman were not required to be present at formation in order to be parties to the joint venture agreement if Baronowski had the authority to represent them. *See, e.g., Brown Bros. Electrical Contractors, Inc. v. Beam Construction Corp.*, 41 N.Y.2d 397, 399–400, 393 N.Y.S.2d 350, 352, 361 N.E.2d 999, 1001–02 (1977) (in determining the existence of a contract, "disproportionate emphasis is not to be put on any single act, phrase or expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the

---

**2.** While defendants have not raised this issue, the Court notes that oral joint venture agreements are enforceable under New York law unless they contain an express term for a period exceeding one year. *See Canet v. Gooch Ware Travelstead*, 917 F.Supp. 969, 988–89 (E.D.N.Y.1996). This question may well be addressed at a later stage in these proceedings.

**3.** Although the First Amended Complaint does not specify, I will presume this figure represents an annual salary. ·

**4.** This Opinion refers to each Count of the Complaint as a "Claim". *See* 1B James W. Moore, *Moore's Federal Practice* ¶ 0.410[1] at III–171 n. 2 (2d ed.1996) (explaining the Federal Rules of Civil Procedure have abandoned the term "cause of action" and instead use the term "claim").

objectives they were striving to attain"). Keating and Coleman's alleged partial performance of the joint venture agreement raises a valid factual question as to whether they were parties to that agreement. Dismissal of the First claim against Keating and Coleman pursuant to Rule 12(b)(6) at this time.is inappropriate because plaintiff is entitled to offer evidence to support his claim that Keating and Coleman were parties to the joint venture agreement.

**B. Second Claim: Breach of Agreement to Form a Joint Venture (against Baronowski, Keating and Coleman)**

Keating and Coleman's motion to dismiss the Second claim relies on the arguments used in support of their motion to dismiss the First claim, namely that they cannot as a matter of law be parties to the joint venture agreement because they are not alleged to have been present at its formation. This motion is denied for the reasons expressed above in Part III(A).

**C. Third Claim: Breach of Fiduciary Duty (against Baronowski, Keating and Coleman)**

■ Defendants Baronowski, Keating and Coleman argue that because plaintiff has failed to adequately plead the existence of a joint venture agreement, he· has not adequately alleged the existence of a fiduciary duty on behalf of defendants. Plaintiff alleges the defendants' fiduciary duties arose from the joint venture agreement, by virtue of which plaintiff and defendants were partners in the TCB acquisition, and from defendants' long-term "relationship of trust and confidence" with plaintiff. *See* First Amended Complaint at ¶¶ 73–74. These allegations suffice to plead the existence of fiduciary duties on the part of these defendants. As plaintiff has adequately pled the existence of a joint venture agreement, defendants' argument must fail.

■ Defendants also argue that plaintiff's breach of fiduciary duty claim is merely a converted contract claim because defendants' alleged fiduciary duties arise solely from contract. This argument ignores the well-established principle of New·York law that where

the breach of a contract is also a breach of a fiduciary duty, a plaintiff may assert a claim for both. *See, e.g., Litton Industries. Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 767 F.Supp. 1220, 1231 (S.D.N.Y.1991) ("[T]ort liability for breach of fiduciary duty may be predicated upon the precise conduct which also constitutes a breach of contractual obligations"), *rev'd on other grounds,* 967 F.2d 742 (2d Cir.1992); *Meyers v. Waverly Fabrics,* 65 N.Y.2d 75, 80 n. 2, 489 N.Y.S.2d 891, 894 n. 2, 479 N.E.2d 236, 239 n. 2 (1985) (*per curiam* ). Defendants' motion to dismiss the Third claim is denied.

**D. Fourth Claim: Constructive Trust (against Baronowski, Coleman, Keating, Barcol, CM and CMH)**

*1. Defendants Coleman and Keating*

■ Under New York law, a party claiming entitlement tö a constructive trust must ordinarily establish four elements: (1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer made in reliance on that promise; and (4) ·unjust enrichment. *See In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 352 (2d Cir.), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992). These elements are not always required, however, and the constructive trust doctrine has been interpreted in a flexible manner to prevent unjust enrichment. *See Simonds v. Simonds,* 45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 363, 380 N.E.2d 189, 193–94 (1978).

■ Defendants Coleman and Keating argue that the Fourth claim for a constructive trust must be dismissed because plaintiff has failed to adequately plead the existence of fiduciary duties on their part. This argument fails because plaintiff has adequately pled the existence of defendants' fiduciary duties.

*2. Defendants CMH and CM*

■ Defendants argue that because CMH and CM could not have owed a fiduciary duty to plaintiff, the Fourth claim must be dismissed. This argument is without merit. The New York Court of Appeals has express-

ly stated that a constructive trust may be imposed notwithstanding the lack of a fiduciary relationship. The key factor in deciding whether to impose a constructive trust is the prevention of unjust enrichment. *See In re Koreag Controle et Revision S.A.,* 961 F.2d at 352; *Simonds,* 45 N.Y.2d at 242, 408 N.Y.S.2d at 364, 380 N.E.2d at 194–95. Plaintiff alleges that Baronowski, Coleman and Keating set up CMH and were the principal officers of both CMH and CM. *See* First Amended Complaint at ¶¶ 8, 9, 53. Assuming that the allegations set forth in the First Amended Complaint are true, CM and CMH benefited when plaintiff gave his money and time to Baronowski, Coleman and Keating. Thus, even if CMH and CM committed no wrongful acts, the two entities may have been unjustly enriched by plaintiff's loans to Baronowski, Coleman and Keating, and by the services plaintiff rendered in furtherance of the joint venture to acquire TCB. *See Bridgestone/Firestone, Inc. v. Recovery Credit Services,* 98 F.3d 13, 17–18 (2d Cir. 1996) (New York law disregards corporate form when it has been used to achieve fraud, or when it must be deemed an alter-ego). If so, plaintiff would be entitled to a constructive trust imposed against CMH and CM.

### E. Fifth Claim: Accounting (against Baronowski, Coleman Keating, Barcol, CMH and CM)

■ Plaintiff alleges that defendants derived substantial income and profits from his loans and services, and seeks an accounting to determine the value of this income and profits. Defendants Coleman, Keating, Barcol, CMH and CM move to dismiss the Fifth claim for an accounting on the grounds that plaintiff has failed adequately to allege (1) the existence of fiduciary duties on their part, or (2) the existence of a trusting and confidential relationship between the parties and (3) that plaintiff entrusted money to defendants. For the reasons discussed above, the First Amended Complaint adequately pleads the existence of fiduciary duties on the part of Baronowski, Coleman and Keating. Assuming the facts set forth in the First Amended Complaint are true, Barcol, CMH and CM are merely the corporate alter-egos of Baronowski, Coleman and Keating. As such, these corporate entities may not successfully argue for the dismissal of plaintiff's request for an accounting by disavowing any fiduciary duty to plaintiff.

### F. Sixth Claim: Quantum Meruit (against Baronowski, Coleman, Keating, and Barcol)

Defendants do not move to dismiss plaintiff's Sixth claim.

### G. Seventh Claim: Unjust Enrichment (against Baronowski, Coleman, Keating, Barcol, CMH and CM)

■ The parties agree that to establish a claim for unjust enrichment, a plaintiff must allege that (1) a defendant has been unjustly enriched; (2) the enrichment was at plaintiff's expense; and (3) defendant's retention of the benefit would be unjust. *See, e.g. Van Brunt v. Rauschenberg,* 799 F.Supp. 1467, 1472 (S.D.N.Y.1992). Defendants CM and CMH seek dismissal of the Seventh claim for unjust enrichment on the ground that it did not benefit from the acquisition of TCB and that plaintiff did not expect repayment from them but rather from defendants Baronowski, Coleman and Keating. For the reasons discussed above, CM and CMH cannot be distinguished from Baronowski, Coleman and Keating for purposes of deciding defendants' motions to dismiss. There is no legitimate reason to dismiss plaintiff's Seventh claim against CM and CMH as these entities are alleged to be the alter-egos of Baronowski, Coleman and Keating.

### H. Eighth Claim: Tortious Interference with Contract (against BDS, McCabe, Barcol, CM, CMH, RavensRock and High View)

#### 1. *Defendants CM. CMH and Barcol*

Plaintiff consents to withdraw its Eighth claim against CM, CMH and Barcol for tortious interference with contract. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion ("Plaintiff's Memo") at 24 n. 7. I therefore need not address defendants' arguments with regard to the Eighth claim and these defendants.

## 2. *Defendants BDS and McCabe*

Defendants BDS and McCabe argue the Eighth claim must be dismissed because it fails to allege with adequate specificity any conduct of BDS or McCabe that could rise to the level of tortious interference with contract. To adequately plead a claim for tortious interference with contract, a plaintiff must allege that (i) a valid contract existed between himself and a third party; (ii) defendant knew of this contract; (iii) defendant intentionally induced the third party to breach the contract or otherwise render performance impossible; (iv) damages. *See, e.g., International Minerals & Resources, S.A. v. Pappas,* 96 F.3d 586, 595 (2d Cir. 1996) (citing, *inter alia, Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 934, 612 N.E.2d 289, 292 (1993)). The First Amended Complaint meets these requirements. *See* First Amended Complaint ¶¶ 94–97. Specifically, plaintiff alleges that even though McCabe and BDS were aware of the joint venture agreement, "BDS and its president McCabe saw an opportunity to oust Blank from the TCB deal" and "[t]o this end ... met with Baronowski, Coleman and Keating to discuss ousting Blank from the TCB acquisition, dropping Blank as a joint venture partner, and using BDS to locate investors for the TCB acquisition.". First Amended Complaint at ¶ 96. BDS's argument that the Eighth claim must be dismissed because plaintiff has failed to set forth the precise substance, time and location of actual statements that allegedly induced the breach is without merit.[5]

## 3. *Defendants RavensRock and High View*

Defendants RavensRock and High View also contend that the First Amended Complaint fails to adequately plead a claim for tortious interference with contract against them because it lacks specific allegations with regard to their conduct. However, the First Amended Complaint alleges that when McCabe tortiously interfered with plaintiff's contract, he did so as an agent of RavensRock and High View. *See* First Amended Complaint at ¶ 96. It is also alleged that RavensRock and High View knew at all relevant times of the joint venture agreement. *See id.* at ¶ 94. As explained above, the absence of specific factual allegations with regard to times, locations and precise statements or acts by the defendants does not require dismissal of the Eighth claim. The First Amended Complaint adequately pleads a claim for tortious interference with contract as to defendants RavensRock and High View.

## 4. *Punitive Damages*

Under New York law, punitive damages are allowable in tort cases involving claims for fraud, breach of fiduciary duty or tortious interference with contract even if there is no harm aimed at the general public "so long as the very high threshold of moral culpability is satisfied". *Giblin v. Murphy,* 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54, 56, 532 N.E.2d 1282, 1284 (1988). *See also Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 509 (2d Cir.1991) (punitive damages available for tort claims involving "gross, wanton, or willful fraud or other morally culpable conduct" even if that conduct is not directed at the general public) (quotation omitted), *cert. denied,* 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992); *Roy Export Co. v. Columbia Broadcasting System,* 672 F.2d 1095, 1106 (2d Cir.) (punitive damages for tort claims available "where a wrong is aggravated by recklessness or willfulness"), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Cohen v. Davis,* 926 F.Supp. 399, 405 (S.D.N.Y.1996). The underlying facts of this case allege a course of conduct that a reasonable jury might find to be so morally reprehensible as to justify the award of punitive damages. Defendants' arguments that

---

**5.** Rule 9(b) of the Federal Rules of Civil Procedure requires particularity in the pleading of fraud claims. Tort claims, however, are held to the less stringent "notice" requirement of Rule 8(a)(2), which does not require the pleading of " 'facts' or 'ultimate facts' or 'facts' sufficient to constitute a cause of action' ". *See Wade v. John-*

*son Controls, Inc.,* 693 F.2d 19, 21 (2d Cir.1982) (quoting 2A James W. Moore, *Moore's Federal Practice* ¶ 8.13 at 8–101 (2d ed.1982)). Thus plaintiff need not set forth the exact statements upon which he bases his claim for tortious interference with contract in the First Amended Complaint.

plaintiff's tort claims may not sustain a request for punitive damages as a matter of law are therefore rejected.

### I. Ninth Claim: Fraud (against Baronowski)

 To prove fraud under New York law, a plaintiff must show that:

(1) the defendant made a material false statement, (2) the defendant intended to defraud the defendant thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.

*Bridgestone/Firestone Inc.*, 98 F.3d at 19 (quotations omitted). An action for breach of contract may not be converted into one for fraud merely by alleging that the contracting party never intended to meet his contractual obligation, for this would allow a plaintiff to plead two independent claims, and recover twice, for the same conduct. *See, e.g., GSGSB, Inc. v. New York Yankees,* 862 F.Supp. 1160, 1177 (S.D.N.Y.1994); *New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 319–320, 639 N.Y.S.2d 283, 289, 662 N.E.2d 763, 769 (1995). Rather, as the Court of Appeals has explained,

[I]n such a situation a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Bridgestone/Firestone, Inc.,* 98 F.3d at 20 (citations omitted). *See also Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 898–99 (2d Cir. 1980) ("If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort.").

 Thus the same acts may independently give rise to actions for both fraud and breach of contract. Whether the First Amended Complaint adequately pleads misrepresentations collateral to the alleged joint venture agreement, however, is a close question. The allegedly false and misleading statements made by Baronowski closely track the terms of the joint venture agreement. *See* First Amended Complaint at ¶¶ 104–105 (false statements were that plaintiff was Baronowski's partner, that plaintiff would receive the same amount of stock as Coleman and Keating and the same salary as Coleman, and that plaintiff would participate fully in the TCB acquisition). Plaintiff, however, does not only allege that Baronowski made these false statements before the formation of the joint venture agreement in order to induce plaintiff's consent, but also that Baronowski repeated them each time he asked to borrow money from plaintiff after the joint venture agreement was allegedly formed. *See id.* at 106.

Plaintiff's fraud claim therefore alleges that Baronowski made false representations regarding the existence of a joint venture agreement in order to induce plaintiff to loan him money on the strength of that contract. Although these false representations essentially repeated the terms of the joint venture agreement, they were "extraneous" to the contract in that they misrepresented a present fact (i.e., that defendant believed a joint venture agreement existed) rather than defendant's future intent to honor that contract. *See Bridgestone/Firestone, Inc.,* 98 F.3d at 20 (citing *Deerfield Communications Corp. v. Chesebrough–Ponds Inc.,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003, 1004 (1986)). As plaintiff's fraud claim does not merely duplicate his claims for breach of the joint venture agreement, but rather is grounded in fraudulent statements made after its formation, defendants' motion to dismiss the Ninth claim is denied.

### J. Tenth Claim: Breach of Contract

Defendants argue that plaintiff's Tenth claim for breach of contract must be dismissed as to defendants CM and CMH. As plaintiff consents to withdraw its Tenth claim against CM and CMH, *see* Plaintiff's Memo at 24 n. 7, I need not rule on defendants' motion.

### K. Eleventh Claim

Defendants do not move to dismiss plaintiff's Eleventh claim.

## IV. Conclusion

Rule 12(b) (6) can provide a swift and inexpensive means to terminate nonviable claims before trial. Yet all too often, defendants in civil cases move under this rule even when confronted with viable claims. Such motions squander judicial resources, needlessly delay litigation on the merits of the plaintiff's claims, and ultimately defeat the purpose of Rule 12(b)(6). This may well have been one such motion. For the foregoing reasons, defendants' motions are denied. Plaintiff withdraws its Eighth claim against CM, CMH and Barcol, and its Tenth claim against CM and CMH.