[619 NYS2d 260]

ALLIED SHEET METAL WORKS, INC., Appellant, v KERBY SAUN-
DERS, INC., et al., Respondents.

First Department, November 29, 1994

### APPEARANCES OF COUNSEL

*Ronald D. Lefton* of counsel, Hempstead *(Ira J. Lefton,* and *Camhy, Karlinsky & Stein,* New York City, attorneys), for appellant.

*Michael A. Mulqueen* of counsel, New York City *(Scott E. Solomon* on the brief; *Ross & Cohen,* attorneys), for Kerby Saunders, Inc. and another, respondents.

*Steven E. Cohen* of counsel, Williston Park *(Steven L. Levitt* on the brief; attorneys), for D.N.S. Sheet Metal Co., Inc. and others, respondents.

*Lee J. Mondshein* of counsel *(Semon & Mondshein,* attorneys), for Center Sheet Metal, Inc. and others, respondents.

*Richard Cashman* of counsel, New York City *(Pavelic' & Levites, P. C.,* attorneys), for Jamaica Water Properties, Inc. and others, respondents.

### OPINION OF THE COURT

RUBIN, J.

At issue in this case is whether plaintiff Allied Sheet Metal Works, Inc. and defendant Kerby Saunders, Inc. reached a meeting of the minds upon all the essential elements of an agreement so as to constitute an enforceable contract. In opposition to defendants' motion for summary judgment dismissing the complaint, plaintiff asserts that the parties reached an agreement wherein plaintiff was to provide sheet metal fabrication and installation for the heating, ventilation and air-conditioning system of a building at Mount Sinai

Hospital. Allied relies upon a document dated November 26, 1986 designated a "scope sheet" that it claims details the "scope of work to be performed, price, and time of performance" with sufficient particularity so as to be enforceable against defendant Kerby Saunders. The complaint seeks damages for breach of contract against this defendant. It is undisputed that, on December 2, 1986, Kerby Saunders executed a "scope sheet" with defendants D.N.S. Sheet Metal Co., Inc. and Center Sheet Metal, Inc. as subcontractors on the project.

The claims against defendants other than Kerby Saunders allege tortious interference with contractual relations and are therefore predicated upon a viable contract between plaintiff and Kerby Saunders. Defendants Jamaica Water Properties, Inc. and the Warkol corporations acquired the stock of Kerby Saunders on or about December 8, 1986, after it had allegedly entered into the subject contracts. The individual defendants are principals of those corporations.

It is uncontested that the contracts in issue are governed by the Statute of Frauds (General Obligations Law § 5-701). As a threshold issue, it should be noted that the writing relied upon by plaintiff is facially sufficient to comply with the requirements of the Statute. It is signed by defendant's vice-president, who has at least apparent authority to bind the corporation, and sufficiently identifies the project, including the job number, the work to be performed and the price to be paid by defendant Kerby Saunders to Allied for fabrication and installation of ductwork and associated equipment. As such, it constitutes "some note or memorandum * * * in writing, and subscribed by the party to be charged" (id., § 5-701 [a]) and is in literal compliance with the requirements of the Statute of Frauds.

The question remains, however, whether the parties reached agreement on all the material terms of the contract so as to give rise to an enforceable agreement. To be considered a sufficient memorandum within the ambit of the Statute of Frauds, a writing "must designate the parties, identify and describe the subject matter and state all the essential or material terms of the contract" (Villano v G & C Homes, 46 AD2d 907, citing Tobias v Lynch, 192 App Div 54, affd 233 NY 515; 56 NY Jur, Statute of Frauds, § 165). Specifically in contention in this case is whether Kerby Saunders considered it necessary and material that Allied post a bond to guarantee its performance of the work. Plaintiff Allied contends that Kerby Saunders only raised the issue of a performance bond

as an excuse to withdraw from an otherwise complete and binding agreement.

The "scope sheet" upon which Allied relies is silent on the subject of a performance bond or any amount that securing performance would add to the price to be paid by Kerby Saunders to plaintiff. While it is not essential to determination of this appeal, it cannot be said that Kerby Saunders lacked a valid commercial reason for dealing with companies known to be in sound financial condition and capable of performing the work *(see, Guard-Life Corp. v Park Hardware Mfg. Corp.,* 50 NY2d 183, 189-191). However, it is plaintiff's position that the requirement of a bond was merely a pretense and that the material terms of its contract with Kerby Saunders can be discerned from the "scope sheet" and the general specifications for the project.

If the performance bond is deemed to be necessary to the subcontract between Allied and Kerby Saunders, the Court must conclude, as Supreme Court found, that these parties failed to reach agreement and failed to draft a sufficient memorandum incorporating an essential term of their contract. For the purposes of appeal from a motion granting summary judgment dismissing the complaint, this Court may accept a plaintiff's contention that any details of performance, including requirements for the time within which various stages of the work are to be completed, could be ascertained by reference to the specifications, architect's drawings and the general terms and conditions of performance specified by the property owner. However, this argument was not raised before Supreme Court, and the collateral documents are not a part of the record *(First Intl. Bank v Blankstein & Son,* 59 NY2d 436, 447; *Kramer v Interboro Mut. Indem. Ins. Co.,* 176 AD2d 308, 309). Moreover, the general specifications for the construction project provide neither any guidance on the question of whether Kerby Saunders considered it essential that Allied post a performance bond nor what the value of such a bond might be.

The party seeking to enforce a contract bears the burden to establish that a binding agreement was made and to prove the terms of the contract *(Paz v Singer Co.,* 151 AD2d 234, 235, citing Fisch, NY Evidence § 1098 [2d ed]). The agreement is required to be sufficiently definite so that a court can ascertain its terms for the purpose of determining whether it has been breached and avoiding imposition of contractual obligation under circumstances where intent to conclude a binding

agreement is not present *(Cobble Hill Nursing Home v Henry & Warren Corp.,* 74 NY2d 475, 482, *cert denied* 498 US 816). Parol evidence is admissible to demonstrate that no contract came into being due to the failure of a condition precedent *(Hicks v Bush,* 10 NY2d 488) or to resolve an ambiguity in an otherwise enforceable agreement *(State of New York v Home Indem. Co.,* 66 NY2d 669, 671).

The document alleged to constitute the contract binding Kerby Saunders to employ Allied as its subcontractor is a single-page checklist dated November 26, 1988, containing 77 items divided into three sections. Each item is followed by two check boxes except the first item, which specifies the type of ductwork to be installed. Underneath the checklists, the sum of $11,200,000 is written in, and the document is endorsed by representatives of both Allied and Kerby Saunders.

The writing is devoid of any of the formalities of contract. There is no indication on the piece of paper that it is even intended to be a contract, rather than simply a memorandum of the work covered by plaintiff's bid. It lacks words of agreement and is incomplete on its face. Item 16a, designated "Sheetmetal covers for equip", bears the notation "(Sep. $)", indicating that not every detail of the work to be performed and its pricing had been resolved. Finally, a contract of this magnitude is one that the courts would ordinarily expect the parties to embody in a formal writing *(Mitchill v Lath,* 247 NY 377, 380-381).

Leaving aside such questions as why parties to a contract exceeding $11 million would rely on such a cursory memorandum of their understanding and accepting, for the moment, plaintiff's assertion that the document suffices as an indication of agreement, there is still the matter of the bond alleged by defendant Kerby Saunders to be an essential part of the contract. The only other document in the nearly 1,000 pages of the printed record that bears on the terms of the agreement between the parties is also a checklist, prepared one month before the asserted contract or "scope sheet" was signed. On this document, in the space labelled "job description", is written, "Buy out check list for Allied S/M". The last item on the list is "Bond—Add?" and to the right, in place of a check mark, is written "Yes". Therefore, without resort to parol evidence, based upon the modicum of documentation available in this matter, it can be said that the topic of a performance bond arose well prior to the date of the alleged contract.

The documentary evidence is consistent with certain admissions contained in the testimony of plaintiff's project manager, Joseph Donohue, during his pretrial deposition. He acknowledges that the topic of a performance bond was discussed during the meeting with Kerby Saunders' vice-president, Vince Terraferma, on October 27, 1986, the date the "[b]uy out check list" was signed. Likewise, Allied's president, Samuel Singer, admits that the topic was discussed and that Mr. Donohue had informed Mr. Terraferma that if Kerby Saunders required a bond to be posted, "it will cost you money." Mr. Singer also stated that "I might have said something [like] it will cost you another five or six percent of the bid." As late as December 1, 1986, in discussions with the principals of defendant Jamaica Water Properties, the corporation that would acquire Kerby Saunders, Mr. Singer indicated that he placed the additional cost to have the job bonded at "$200,000 to $350,000."

Whether the cost of bonded performance of the work by Allied is placed at $200,000 or at six per cent of the bid ($672,000), it is clear that it represents a substantial sum that cannot be considered immaterial by any stretch of the imagination. Allied's answer to this is the contention that the "scope sheet" constitutes the entire agreement between it and Kerby Saunders and, since that document is silent on the matter, no bond was required to be posted by Allied. This argument, however, is inconsistent with Allied's position that material terms of the contract may be established by reference to the master agreement between the contractor and the owner. Either the "scope sheet" is the entire agreement between the parties or it is not.

Plaintiff cannot prevail on this motion for summary judgment. If, as it contends on the one hand, the "scope sheet" is the entire agreement, the contract fails for indefiniteness for the omission of any number of material terms, including the scope of work to be performed, price, and time of performance (see, *Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482, *supra*), terms that plaintiff candidly concedes must be gleaned from the master agreement between Mount Sinai Hospital and the general contractor. But even if the "scope sheet" is regarded, for the sake of argument, as the entire agreement, defendant Kerby Saunders is not thereby barred from raising the issue that posting a performance bond was a condition precedent to the contract (*Hicks v Bush*, *supra*). Moreover, the burden to demonstrate that this condi-

tion was fulfilled and, therefore, that the contract became enforceable, falls upon plaintiff as the party to whom a duty is owed *(Lindenbaum v Royco Prop. Corp.,* 165 AD2d 254, 258, quoting Calamari and Perillo, Contracts § 140, at 227-228). For the purposes of deciding the motion for summary judgment, only in the event that a valid and definite agreement can be established does the need for a trial in this matter arise, and then only for the purpose of permitting defendant Kerby Saunders to demonstrate, by the introduction of parol evidence, that an otherwise complete and binding contract never become effective because it was conditioned upon the posting of a performance bond *(Hicks v Bush, supra).*

If, in the alternative, as plaintiff effectively concedes and as the documentary evidence conclusively establishes, the "scope sheet" is not the entire agreement between Allied and Kerby Saunders, the admissions of Allied's president and project manager demonstrate that posting a performance bond was a material term of the contract and that it was a matter that was raised one month prior to the date these parties executed the "scope sheet" and remained unresolved thereafter. On December 1, 1986, nearly a week later, bonded performance was the subject of discussions between Samuel Singer, plaintiff's president, and principals of Jamaica Water Properties, Inc., the corporation that was to acquire Kerby Saunders. The omission of this material term from the alleged contract renders it insufficient as a writing within the Statute of Frauds and, thus, bars its enforcement as a void instrument (General Obligations Law § 5-701 [a]). In the absence of a sufficient memorandum of the asserted agreement, plaintiff is barred from introducing parol evidence to attempt to prove its terms.

Notably, plaintiff does not argue that any defendant frustrated a good-faith attempt on its part to obtain a performance bond *(compare, Gulf Oil Corp. v American La. Pipe Line Co.,* 282 F2d 401, 404). Rather, the facts suggest that the state of plaintiff's books made obtaining a bond unlikely until an audit could be performed, a process that would take considerable time to complete. The same fact repudiates plaintiff's attempt to attach significance to the absence of a performance bond in the formal contract eventually entered into between Kerby Saunders and defendants Center Sheet Metal, Inc. and D.N.S. Sheet Metal Co., Inc. The affidavit of Floyd Warkol, Chairman of Kerby Saunders, states that the final contract included the corporate guarantees of performance of

both defendant Center Sheet Metal and defendant D.N.S. Sheet Metal Co., as joint venturers, together with the personal guarantees of the five principals of those corporations. Furthermore, Mr. Warkol testified at his examination before trial that, while he had never worked with Allied, he was personally aware of the financial condition of D.N.S., having made a point of obtaining yearly financial statements from the corporation. He further indicated that he was aware of the personal financial condition of the principals of Center. Finally, Samuel Singer, in his examination before trial, indicated that he knew D.N.S. had previously performed work for Kerby Saunders.

■ In the absence of a binding contract, plaintiff's claims against all the defendants for breach of contract and for tortious interference with contractual relations must fail. It is well established that the existence of a binding contract is an essential element of the tort *(Kronos, Inc. v AVX Corp.,* 81 NY2d 90, 94, citing *Israel v Wood Dolson Co.,* 1 NY2d 116, 120). Plaintiff has not furnished a sufficient memorandum of its asserted contract with Kerby Saunders to comply with the Statute of Frauds and cannot supply evidence in admissible form to oppose defendants' motion for summary judgment *(Zuckerman v City of New York,* 49 NY2d 557, 562; *Indig v Finkelstein,* 23 NY2d 728, 729).

Accordingly, the judgment of the Supreme Court, Queens County (Joan M. Durante, J.), entered November 19, 1991, which dismissed the complaint as against all defendants, should be affirmed, without costs.

ELLERIN, J. P., ROSS, ASCH and WILLIAMS, JJ., concur.

Order, Supreme Court, Queens County, entered November 19, 1991, affirmed, without costs.