■ PENSEE ASSOCIATES, LTD., Appellant, v QUON INDUSTRIES, LTD., Defendant, and SERVICE BUSINESS FORMS, INC., et al., Respondents. [660 NYS2d 563] —Judgment, Supreme Court, New

York County (Marilyn Diamond, J.), entered March 8, 1995, upon a jury verdict, in favor of defendants, unanimously reversed, without costs, the judgment vacated and the matter remanded for a new trial.

The primary issue under review is whether defendant Quon Industries acted as agent for plaintiff Pensee in regard to the sale of Pensee's inventory of telephones, and whether the consortium of defendants-respondents, who purchased the telephones, acknowledged the existence of the agency in their dealings with Quon Industries. For the reasons set forth below, we conclude: that Quon at all times was constrained by its fiduciary responsibility as Pensee's agent in the sale of the subject inventory, as is evidenced by multiple agreements and confirmations between Pensee and Quon Industries; that Pensee was a valid third-party beneficiary of additional agreements between Quon Industries and the defendants-respondents; and that there was sufficient prima facie evidence that defendants colluded to deprive Pensee of the benefits of the sale as to have warranted submission of a charge of conspiracy to defraud claim to the jury.

Plaintiff Pensee is a New York corporation in the business of importing goods from Korea for resale in the United States. Defendant Quon Industries, which has not appeared in the action, joined with Pensee in 1983 to form Tele-Matique Corporation, in which Pensee was to be the majority shareholder. In anticipation of the new corporation, Pensee had purchased a large supply of telephones for resale, of which 300,000 were still in its inventory when the Tele-Matique relationship was terminated in 1984. Several agreements concerning the sale of these telephones followed.

By memorandum agreement dated February 15, 1984, Pensee agreed, as *owner* of the telephones, to allow Quon Industries to sell them on a commission basis. A subsequent February 27, 1984 memorandum agreement provided for Pensee's purchase of all stock in Tele-Matique, and, insofar as is relevant to the appeal, also gave Quon the exclusive right to sell the telephones by April 1, 1984, "at cost, cost plus, or below cost *upon consultation with Pensee* on market condition". Pensee agreed to fill the purchase orders of Quon Industries' customers, but, further manifesting its control over the terms of any sale, required them to be "privately held credit worthy companies or publicly quoted corporations." In a "Cross Corporate Guarantee", the parties also agreed that Quon Industries was "fully authorized to market and distribute present inventory of telephones".

The Ganzer Corporation was formed by defendants Kevin Ganzer and Laurence Wolfberg in March 1984. The president of Quon Industries, Quon Shih-Shong, and the Ganzer Corporation, as nominee of defendant Service Business Forms, Inc. and defendant Wolfberg (collectively the "Wolfberg defendants"), signed a "Purchase Order" on April 26, 1984, for the sale of the 300,000 telephones. As between Quon Industries and Pensee, the Purchase Order became the professed instrument governing the sale. According to the Purchase Order, the telephones were classified as consisting of two models, which would sell for $17 or $18 per unit, with payment to be made "net 60 days" after shipment, a term of payment which gave Quon Industries sufficient cover to conceal interim, undisclosed, payments. The total purchase price was stated to be $5,300,000.

On or about May 16, 1984, Pensee and Quon Industries entered into another agreement, providing to Quon an 85 cent commission per unit, reinforcing that Quon Industries was a commission agent of Pensee's for sale of the telephone inventory, in exchange for Quon Industries' agreement to assign *to Pensee* remittances on its invoicings on the Ganzer Purchase Order.

However, Quon Industries and Ganzer/Wolfberg in the meantime had also executed a "Marketing Agreement" providing for a $5 per unit sale price (eventually, the purchase was reduced to 225,000 telephones), which became a shadow instrument governing the sale as between Quon Industries and the purchasers. Quon Industries, in effect, maintained parallel, but inconsistent, deals at the same time, with different prices and different terms of payment. Although the Marketing Agreement was dated June 15, 1984, the record evidence indicates that it actually was executed the same day as the Purchase Order and, in fact, these parties later gave it a retroactive effect to June 1, 1984. The Marketing Agreement, apparently undisclosed to Pensee, altered the terms of payment by requiring the purchasers to wire transfer $500,000 to Quon Industries followed by a letter of credit, drawn on the Fourth National Bank of Wichita, Kansas, designating Quon Industries as payee, effectively keeping Pensee out of the remittance loop. The $500,000, in fact, was wired from the purchasers to Quon Industries prior to May 24, 1984. By that time, though, only 5,808 telephones had been released by Pensee and shipped.

Since shipments were not being made on the Ganzer Purchase Order, despite $500,000 having been wired, Wolfberg requested a meeting with Quon Industries, which was scheduled for May 24, 1984 in Los Angeles.

On May 22, 1984, though, Pensee's president contacted Ganzer and Wolfberg directly to inquire about the 60-day payment term set forth in the Purchase Order, at which time Pensee was made aware of the cash transfer and letter of credit in favor of Quon Industries. However, Wolfberg did not mention the existence of the separate Marketing Agreement (with the significantly reduced purchase price), nor, when Pensee requested a meeting, did Wolfberg mention that he already was scheduled to meet Quon in two days.

Pensee subsequently drafted a "Confirmation of Release of Merchandise" ("Confirmation of Release"), whereby Wolfberg was to confirm the Purchase Order price of $17 or $18 per unit, and confirm that "all payments in this order should be made payable" to Pensee, to be remitted at Pensee's New York address. By memorandum dated May 23, 1984, Pensee and Quon Industries agreed that Pensee would release the remaining inventory in exchange for Quon Industries' procuring Wolfberg's signature on the Confirmation of Release, but, in the event Wolfberg did not sign, Pensee acknowledged that Pensee was "holding up Quon's commitment of delivery."

At the May 24, Los Angeles meeting, Wolfberg signed *a release*, but not the Pensee-drafted release. Rather, a new Confirmation of Release, setting forth the relevant terms, had been drafted on Quon Industries' stationery. Ostensibly, Pensee was not a party to it, although apparently a carbon copy was sent to Pensee, providing a basis for Pensee's reliance on the terms thereby settled between the signatories. As a consequence of Wolfberg's acquiescence in the Confirmation of Release, shipments resumed on June 4, 1984 and were completed by June 18, 1984. However, in violation of the Confirmation of Release, but consistent with the Marketing Agreement, neither Wolfberg nor Ganzer sent the payments to Pensee, and Quon still drew off the letter of credit.

Another agreement followed, between Quon Industries and Ganzer, dated June 1, 1984 but executed June 15, 1984. Quon Industries represented therein that it was the principal party having the authority to "market, sell, negotiate, ship and convey title" to the telephones, notwithstanding its association with Pensee, ostensibly reflecting Quon's, rather than Pensee's authority to set price and payment terms. This letter agreement directed that payments would be made by letter of credit with the balance to be remitted by June 25, 1984. The letter agreement also confirmed that the Confirmation of Release dated May 22 and delivered at the May 24 meeting ostensibly reflected Quon Industries' direction (i.e., not Pensee's direction)

that all payments were to be made to Pensee instead of Quon Industries, subject to Quon Industries' further instructions. However, the letter of credit already designated Quon Industries as authorized payee. It was further agreed that upon Quon Industries' written instructions, the purchasers would notify the drawee bank of any change in designation of payee, but that in order to do so, Quon Industries was required to return the non-transferable and non-assignable letter of credit as well as pre-payments. This was not done and, apparently, it was never seriously intended. This agreement also confirmed the continuing effectiveness of the Marketing Agreement (i.e., the $5 per unit purchase price rather than a $17 or $18 per unit purchase price). However, the effective date of the Marketing Agreement was now defined to be June 1, 1984, even though it bore a date of June 15, 1984, purportedly making its effective date contemporaneous with a release, *infra*, given to the Wolfberg defendants by Quon Industries.

The Release from Liability was dated June 30, but, by its terms, was retroactively effective as of June 1, 1984. It released Ganzer and Wolfberg and their various corporate entities comprising the remaining defendants from personal liability in connection with the transaction. This Release from Liability now purported to annul the May 22, 1984 Confirmation of Release (obligating the purchasers to remit to Pensee directly, but from which Pensee's participation in the Confirmation was excised) regarding terms and pricing. The Release from Liability apparently sought to cloak its actual purpose by noting a change in the market (hence justifying the reduced purchase price), and substituted the re-confirmed Marketing Agreement ($5 per unit, as contrasted with a purchase price of $17 or $18 per unit under the Purchase Order) as the instrument now governing the sale.

In this subsequent litigation, Pensee seeks to recover from Quon Industries $413,468 for the sale of telephones from Pensee's inventory, in which connection it raised several tort and breach of fiduciary duty and breach of contract claims; sought to recover $3,953,856 collectively from all defendants for the sale of 225,000 telephones; and, alleged, in support of claims of fraudulent misrepresentation and numerous related claims, that the defendants collectively never intended to perform their agreed-upon obligations to Pensee when the various agreements with Pensee and with each other were entered. Central to the litigation is the issue whether Quon Industries had acted as agent for Pensee. On the verdict sheet, the jury answered the first question, addressing this issue, in the negative, upon

which basis judgment was entered for the defendants; the jury never reached the remaining questions on the verdict sheet. However, since the clear preponderance of the evidence indicates the contrary, to wit, that Quon Industries was bound by an agency relationship with Pensee, we reverse and remand for a new trial on certain of the remaining contested issues.

Agency is a fiduciary relationship created as a result of conduct by parties manifesting that the principal party is willing to allow the other party, upon such other party's consent, to act for it subject to the principal's control and within the limits of the authority thus conferred (*Smirlock Realty Corp. v Title Guar. Co.*, 70 AD2d 455, 464, *mod on other grounds* 52 NY2d 179; Restatement [Second] of Agency § 1). This includes the relationship between a commission agent and a principal for the sale of goods, in which title remains in the principal (*Baker v New York Natl. Exch. Bank*, 100 NY 31). The evidence in this case so preponderates in plaintiff's favor as to the existence and constraints of the agency relationship that the jury verdict determining that Quon was not Pensee's agent with regard to the sale of these telephones could not have been reached by any fair interpretation of the evidence (*see generally, Lolik v Big V Supermarkets*, 86 NY2d 744, 746). The memorandum agreements between Pensee and Quon Industries established the acknowledgement of both parties that Pensee owned the telephones and that it allowed Quon Industries to sell them on a commission basis, subject to specified conditions, including Pensee's right to control the choice of customer. The May 16, 1984 agreement between these parties, increasing the commission to 85 cents per unit, ratified a continuation of the original, agency-creating, agreement. The May 23, 1984 agreement whereby Pensee agreed to release the inventory only upon Quon Industries' securing Wolfberg's signature to the Confirmation of Release, manifested Pensee's control over Quon Industries' ability to deliver the goods, by refusing shipment until Wolfberg signed the Confirmation. Quon Industries assented to and acted in furtherance of these requirements, thereby underscoring the agency relationship.

Since the Confirmation of Release, re-drafted to include only defendants as parties, nevertheless recognized Pensee as an intended beneficiary of the agreement, obliging the Wolfberg defendants to satisfy Quon Industries' obligation to Pensee and to give Pensee the benefit of the promised performance, Pensee thus became such an intended third-party beneficiary (*cf., Fourth Ocean Putnam Corp. v Interstate Wrecking Co.*, 66 NY2d 38, 43). The manifestation of such intentions by the parties to

that agreement, specifically, that the Wolfberg defendants would pay Pensee directly in satisfaction of Quon's prior commitment to Pensee to ensure that Pensee would be paid directly, was sufficient so that Pensee's reliance thereon, in its subsequent release of the remaining inventory for shipment, was reasonable and probable (*supra,* at 44-45). The court erred in declining to charge the jury on a theory of breach of the third-party contract.

Since Pensee did not establish that the Wolfberg defendants had made a direct promise to Pensee, the court correctly declined to submit to the jury the theory of promissory estoppel with respect to the Wolfberg defendants. Moreover, the court properly declined to submit fraud claims against the Wolfberg defendants. The elements of fraud are a material misrepresentation to the plaintiff by the defendant, known to be false, made with the intention of inducing plaintiff's reliance thereon which causes plaintiff to reasonably rely on the misstatement and thereby causes plaintiff damages (*First Nationwide Bank v 965 Amsterdam,* 212 AD2d 469, 471). While the record evidence supports a theory of fraud against Quon Industries, it does not support such claims against the remaining defendants, who had not made misrepresentations directly to plaintiff. However, insofar as the record sufficiently establishes the Wolfberg defendants' cognizance of Quon Industries' misrepresentations to Pensee and its orchestration of a scheme to defraud Pensee, from which they would materially benefit by a reduction in purchase price, in which they actively colluded, the court erred in not submitting such a theory of conspiracy to defraud to the jury, for which the completed fraud need not be proved (*cf., Devlin v 645 First Ave. Manhattan Co.,* 229 AD2d 343; *cf., First Nationwide Bank v 965 Amsterdam, supra; cf., Abrahami v UPC Constr. Corp.,* 176 AD2d 180).

Accordingly, since, upon our independent review of the record, we find that Quon Industries acted as Pensee's agent with respect to the sale of the telephones, we reverse and vacate judgment and remand for a new trial to be conducted in a manner consistent with this decision. Concur—Murphy, P. J., Rubin, Tom and Andrias, JJ.