Order, Supreme Court, New York County (Paul G. Feinman, J.), entered September 7, 2011, which granted defendants’ motion to dismiss the complaint pursuant to CPLR 3211, unanimously modified, on the law, to deny the motion as to the breach of contract claim against defendant Elman Investors, Inc., and otherwise affirmed, without costs.
Plaintiff is a Brazilian real estate development company whose business is to identify and structure sale-leaseback transactions. In July 2009, it commenced negotiations with defendant Elman Investors, Inc. (Elman Inc.) and other potential investors in connection with a transaction in which the investor would purchase a refrigerated warehouse built for Fresh Del Monte in Cabreuva, Brazil, and lease it to Frialto, a Brazilian company, on a long-term basis.
On August 19, 2009, Lee Elman, as Elman Inc.’s president, sent plaintiff a non-binding offer that outlined the terms under which Elman Inc. would be willing to enter into the transaction. The price stated at that time was 6.5 million Brazilian reais. Thereafter, the parties continued to negotiate the terms of the investment.
*448 On October 15, 2009, Mr. Elman asked plaintiff to renegotiate the purchase price to a maximum of 5,300,000 reais. Plaintiff alleges that its principal, Reginald Nierynck, informed Mr. Elman that plaintiff would only reopen negotiations if Elman Inc. irrevocably committed to closing the transaction if plaintiff was able to secure the reduced price. In response, on October 16, 2009, Elman Inc. sent plaintiff a letter, signed by Mr. Elman, which stated that “Elman Investors LLC is willing to go forward and close the Transaction, subject to a positive outcome of a due diligence on the underlying documentation, based on the following assumptions:” a purchase price of 5,300,000; plaintiffs fee in the amount of 600,000; 500,000 for “refurbishments/cooling installation”; and closing costs of 200,000 (all amounts in Brazilian reais). The projected closing date was no later than December 31, 2009.
On November 5, 2009, plaintiff advised Mr. Elman that the seller had agreed to reduce the price to 5,200,000 reais. On November 11, 2009, Mr. Elman advised plaintiff that he could not go forward, despite the price reduction, because he was in poor health, did not have final approval from his partners in Brazil, and had “pledged a substantial amount of capital here in the U.S. . . . (over 8 million).” On November 16, 2009, plaintiff forwarded Mr. Elman certain documents provided by the seller to start due diligence. On November 17, 2009, Mr. Elman replied that Elman Inc. would not go forward with the transaction because its “partners in Brazil have not been able to give me a ‘thumbs up’ on this deal because competing alternative investments, with immediate higher yields are available,” he was in poor health, and “we have committed to a large transaction in this country which must close in early December.” Plaintiff now seeks to recover its finder’s fee from Elman Inc. under theories of breach of contract, based on the October 16, 2009 letter, or promissory estoppel. Plaintiff also seeks to pierce the corporate veil and hold Mr. Elman individually liable.
At this procedural stage, the breach of contract claim against Elman Inc. should not have been dismissed.
General Obligations Law § 5-701 (a) (10) requires that the agreement be subscribed by the party to be charged, and that it contain the material terms of the agreement (see Allied Sheet Metal Works v Kerby Saunders, Inc., 206 AD2d 166 [1st Dept 1994]). The motion court found that the breach of contract action must be dismissed against Elman Inc. because the October 16, 2009 letter would only bind Elman Investors, LLC, which is not named as a party. However, as defendants concede in their brief, Elman signed the letter on behalf of Elman Inc., the *449 named corporate defendant. While the letter states that “Elman Investors LLC is willing to go forward and close the Transaction,” it references the parties’ ongoing negotiations, and the August 19, 2009 non-binding offer expressly provided that the purchaser would be Elman Inc. or its “nominee,” possibly “a Delaware limited liability company of which [Elman Inc.] will serve as the Managing Member.” Read in this light, the October 16 letter may reasonably be understood as a commitment by Elman Inc. to have its nominee enter into the transaction.
Furthermore, taken together, the parties’ various writings contained the material terms necessary to satisfy the statute of frauds for a finder’s fee agreement (see Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989], cert denied 498 US 816 [1990]; Chan v Shew Foo Chin, 62 AD3d 471 [1st Dept 2009]; Sorge v Nott, 22 AD2d 768 [1st Dept 1964]). To the extent it is not clear when plaintiff’s fee would be paid, where a contract does not set forth a time for payment, the law implies that payment is due within a reasonable time after performance (see Boone Assoc., L.P. v Leibovitz, 13 AD3d 267 [1st Dept 2004]). Plaintiff alleges that he obtained the reduced price, and at this procedural stage Elman Inc. cannot rely on its own failure to conduct due diligence or to perform a condition necessary for completion to avoid its obligations to plaintiff (see Trylon Realty Corp. v Di Martini, 34 NY2d 899 [1974]; Prime City Real Estate Co. v Hardy, 256 AD2d 80 [1st Dept 1998]; see also Nuvest, S. A. v Gulf & W. Indus., Inc., 649 F2d 943, 947 [2d Cir 1981]).
Plaintiffs promissory estoppel claim fails because it does not allege “a duty independent of the [contract]” (CARI, LLC v 415 Greenwich Fee Owner, LLC, 91 AD3d 583, 583 [1st Dept 2012] [internal quotation marks omitted], lv dismissed in part, denied in part 19 NY3d 845 [2012]; see also Susman v Commerzbank Capital Mkts. Corp., 95 AD3d 589, 590 [1st Dept 2012] [“to the extent the second cause of action was for promissory estoppel, such a claim cannot stand when there is a contract between the parties”], lv denied 19 NY3d 810 [2012]). Furthermore, even if the contract were barred by the statute of frauds, the claim would fail because the allegations in the complaint do not rise to the requisite level of unconscionability (see Steele v Delverde S.R.L., 242 AD2d 414, 415 [1st Dept 1997]; Dunn v B&H Assoc., 295 AD2d 396, 397 [2d Dept 2002]).
Plaintiff failed to state a cause of action against Mr. Elman personally (see 20 Pine St. Homeowners Assn. v 20 Pine St. LLC, 109 AD3d 733, 735-736 [1st Dept 2013]). The conclusory allegations against Mr. Elman do not assert that any actions he *450 took were outside the scope of his role as president of Elman Inc., and they describe ordinary negotiations between parties to a potential acquisition. Nor does plaintiff allege that Mr. Elman’s actions in this transaction were made for his personal gain, as distinguished from gain for Elman Inc. (see Courageous Syndicate v People-To-People Sports Comm., 141 AD2d 599, 600 [2d Dept 1988]). Conclusory allegations of Elman Inc.’s undercapitalization and intermingling of assets, and that Mr. Elman dominated the corporation, without additional facts, are insufficient to pierce the corporate veil (see Andejo Corp. v South St. Seaport Ltd. Partnership, 40 AD3d 407 [1st Dept 2007]).
Concur—Mazzarelli, J.P., Andrias, DeGrasse, Freedman and Gische, JJ.