Peter Beard and PETER BEARD STUDIO, LLC, Plaintiffs,

against
Bernie Chase, PHILIPPE HOERLE-GUGGENHEIM d/b/a HOERLE-GUGGENHEIM GALLERY, and JOHN DOE, INC. d/b/a HOERLE-GUGGENHEIM GALLERY, Defendants.


651504/2015

Appearances
Plaintiff 
GROSSMAN LLP
405 Park Avenue — 10th Floor 
New York, New York 10022 
BY: Judd B. Grossman, Esq. 
Defendant
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
BY: Joshua Krakowsky, Esq. 
Larry Hutcher, Esq. 


Charles E. Ramos, J.

This is an action to recover possession of three pieces of artwork entitled 765 Elephants, Under the Snows of Kilimanjaro, and Charging Bull Elephant (the "Works") by plaintiff Peter Beard ("Mr. Beard"), a highly acclaimed American photographer and artist, which were allegedly taken and offered for sale without Mr. Beard's knowledge or consent. 
In motion sequence 004, Mr. Beard and plaintiff Peter Beard Studio, LLC ("Studio")(collectively, "Plaintiffs") move pursuant to CPLR 3212 for partial summary judgment on their first claim for declaratory judgment, second claim for conversion, and third claim for replevin.
For the reasons set forth below, this Court grants Plaintiffs' motion for partial summary judgment in its entirety.
Background
/i>
The facts set forth herein are taken from the pleadings, affidavits and Rule 19-A Statements, and are assumed to be true for purposes of disposition. 
Mr. Beard is a highly-regarded photographer and artist, and resides in New York, New York (Complaint, ¶¶ 1, 5).
The Studio is a Delaware limited-liability company located in New York, New York (Complaint, ¶ 6). In 2001, Mr. Beard and his wife, Nejma Beard ("Mrs. Beard"), created the Studio to protect and provide a market for Mr. Beard's artwork (Complaint, ¶ 15).
Mr. Beard is the sole owner of the Studio, and Mrs. Beard serves as the Studio's President (Complaint, ¶ 6). As President, Mrs. Beard was authorized to act as Mr. Beard's agent with respect to his business affairs (Complaint, ¶ 17) .
Defendant Philippe Hoerle-Guggenheim is a resident of New York, New York, and does business as defendant Hoerle-Guggenheim Gallery ("Gallery") (Complaint, ¶ 8).
Defendant Bernie Chase ("Mr. Chase") is a resident of La Jolla, California, and is a business partner of the Gallery, which is located at 527 West 23rd Street in New York, New York. Over the years, Mr. Chase has accrued a large collection of Mr. Beard's artwork (Complaint, ¶ 31).
Defendant John Doe, Inc. is allegedly a New York business corporation also doing business as the Gallery (together with the Gallery and Mr. Chase, "Defendants") (Complaint, ¶ 9).
In Fall 2013, Natalie White ("Ms. White") and Mr. Beard agreed to participate in two photo shoots in New York City involving large-format Polaroid camera and film (the "Shoots").
Many individuals participated in the Shoots, including Mr. Chase and his acquaintances (Beard Aff., ¶ 6). The Shoots were partially funded by Mr. Chase (Beard Aff., ¶ 7). 
Simultaneously, Mr. Beard created the Works at various locations throughout the city, including Ms. White's Park Avenue apartment ("Park Avenue Apartment") and the Soho Grand Hotel ("Hotel").
Plaintiffs allege that after completing the Works, they were taken from the Park Avenue Apartment without Mr. Beard's knowledge or consent (Complaint, ¶ 25). Despite his efforts, Mr. Beard was unable to locate the Works (Complaint, ¶ 25). 
In contrast, Defendants claim that they acquired the Works pursuant to two separate "handshake deals" (the "Agreements")(Hogan Aff., Ex. 5, pp. 206-07). It is undisputed that there is no written documentation of the Agreements (Def. Resp. To Pls. Rule 19A, ¶ 14).
Defendants allege that the first agreement occurred in mid-October 2013, wherein Mr. Chase agreed to pay $50,000 for the Under the Snows of Kilimanjaro and $30,000 for 765 Elephants (Chase Aff., ¶ 17).
Defendants allege that after coming to an agreement regarding the purchase of these artworks, they notified Ms. White and shook hands in her presence (Chase Aff., ¶ 18).
Defendants maintain that Mr. Beard directed Mr. Chase to pay the purchase price to Ms. White (Id., at ¶ 19). Subsequently, Ms. White provided Mr. Chase with a handwritten receipt, dated October 23, 2013 ("First Receipt") (Hogan Aff., Ex. 12). The First Receipt reads:
965 Elephants worked by Peter Beard & Large Elephant on Mount Kilimanjaro fully worked by Peter Beard, 2 pieces 80,0000 USD to be paid 10,000 a month, will be picked up upon payment in full. Natalie White 10-23-13. (Id.).
Defendants also allege that they purchased Mr. Beard's artwork, Paradise Lost, for $40,000 during the three-week period between October 29, 2013 and November 18, 2013 (Hogan Aff., Ex. 7, ¶ 31).Mr. Chase alleges that he was directed to pay $20,000 of the payment to Ms. White and $10,000 to Ingrid Levin, Mr. Beard's girlfriend ("Ms. Levin") (Chase Aff., ¶ 32).
In support of this transaction, Defendant produced a second receipt ("Second Receipt"), which is dated Summer 2014. The receipt provides:
Bernie bought 3 pieces of artwork from me for 100k pd. in full. Natalie White. 1 elephant kilo. 1 elephant herd. 1 elephant all finished and worked by PB. N. White. (Hogan Aff., Ex. 13).
Mr. Chase arranged for Mr. Beard to have a room at the Hotel so he could have a space to complete the Works and other pieces of art (Chase Aff., ¶ 37).
During October and November 2013, Mr. Chase alleged that he made various payments on behalf of Mr. Beard, including wiring payments to Ms. White, hotel rooms, medical bills for dentures and implants, and diamond bracelets (Chase Aff., ¶¶ 22, 27, 32-34).
On February 6, 2015, the Gallery hosted a celebration in honor of its opening ("February Showing"), and displayed a small collection of Mr. Beard's artwork (Complaint, ¶32). It is undisputed that Mr. Beard was not notified of the Gallery opening or that his artwork would be displayed (Complaint, ¶ 36).
Following the February Showing, Plaintiffs became aware that Defendants were displaying and offering the Works for sale (Complaint, ¶ 37).
On February 10, 2015, Plaintiffs' counsel contacted Defendant Chase's counsel regarding the return of the Works (Complaint, ¶ 38). On March 19, 2015, Plaintiffs' counsel wrote to Chase's counsel demanding the return of the Works (Complaint, ¶ 39).
On April 21, 2015, Anne Margot Verhallen ("Ms. Verhallen"), an employee of the Gallery, contacted an owner of a gallery in [*2]London ("London Gallery"), notifying her that she had "a lot of artwork by Peter Beard," attaching electronic images of Paradise Lost and Under the Snows of Kilimanjaro (Complaint, ¶ 43).
Subsequently, the owner of the London Gallery notified Mrs. Beard of her communication with Ms. Verhallen. The owner states as follows:
I did speak to the gallery in NY (I sent you the PDF) - what a bunch of morons = they don't even know what collage is!! - I have no idea how they got this material as some of it is new 2013/14). They could not answer questions I asked and have used erroneous titles Etc. Not good at all.
As I said, PB's market is at a critical stage - and I'm not talking about money (as you know, great one are easy to sell) but more about his standing and how he is seen. This does concern me
and I suspect you too, as the long term for your daughter etc is what should be in the forefront. So having these idiots showing his work as the official representative is not helping at all. Complaint, ¶ 44).
On May 5, 2015, Plaintiffs commenced this action, seeking a declaratory judgment and asserting claims for conversion, replevin, and tortious interference with economic advantage.
On May 6, 2015, this Court entered an order to show cause preventing Defendants from selling, assigning or otherwise disposing of the Works (NYSCEF Doc. No. 9).
Discussion
Summary judgment shall be granted "if upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court, as a matter of law, in directing judgment in favor of any party" (CPLR 3212 [b]).
"The party seeking to enforce a contract bears the burden of establishing that a binding agreement was made, and to prove the terms of the contract" (Allied Sheet Metal Works, Inc. v Kerby Saunders, Inc., 206 AD2d 166, 169 [1st Dept 1994]).
Plaintiffs argue that summary judgment should be granted due to the absence of a written agreement, identifying the parties, the purchase price, and other material terms, signed by Mr. Beard or an authorized agent. Plaintiffs maintain that the purported Agreements do not fall within any of the exceptions to the statute of frauds, as they cannot be reasonably considered a contract for services. Similarly, Plaintiffs allege that Defendants have failed to provide credible evidence of full performance as the payments made by Mr. Chase were not "unequivocally referable" to the Agreements.
In contrast, Defendants argue that Mr. Beard's testimony raises issues of fact exist regarding the material terms of the [*3]purported Agreements. Defendants further argue that the affidavits of Mr. Beard and Mrs. Beard lack value because Mrs. Beard only learned of the Works through the London gallery owner in April or May of 2015 and Mr. Beard's lack any recollection of the Agreements. Lastly, Defendants also maintain that the statute of frauds is inapplicable because the transaction was fully performed by both parties and was not for the sale of goods. 
Undoubtedly, Plaintiffs have established that Defendants' ownership claims to the Works fail as a matter of law, and therefore, summary judgment is warranted. Likewise, Defendants have not established that a binding contract existed between Mr. Beard and Mr. Chase, executed by Mr. Beard and setting out material terms (Ex. 5 at 208:22-209:4; 215:21-25).
Pursuant to the statute of frauds, contracts for the sale of goods for over $500 must be memorialized in a writing, indicating that a contract for sale has been made between the parties, and signed by the party against whom enforcement is sought (UCC § 2-201 [1]). Furthermore, the writing must "designate the parties, identify and describe the subject matter and state all the essential or material terms of the contract" (DeRosis v Kaufman, 219 AD2d 376, 379 [1st Dept 1996]).
An exception to the statute of frauds exists if the goods are specially manufactured for the buyer and partial performance has already occurred, or the alleged contract is one for services (UCC § 2-201[3]).
Here, the First Receipt and the Second Receipt are insufficient in that they fail to establish material terms of the purported agreements. First, the Receipts are not signed by Mr. Beard, the party to be charged. They merely reference him to the extent that he authored the Works (Hogan Aff., Ex. 17, p. 13:12-23).
Second, it is undisputed that the First Receipt references 965 Elephants, which is not at issue in this litigation, and references "Large Elephant on Mount Kilimanjaro," when in fact the work's actual name is Under the Snows of Kilimanjaro (Hogan Aff., Ex 12). Similarly, the Second Receipt references the Works as: "1 elephant kilo, 1 elephant herd, 1 elephant". This statement is clearly ambiguous and is insufficient to identify particular pieces of artwork (Hogan Aff., Ex. 13).
The First Receipt and Second Receipt do not clearly identify the parties to the transaction, the specific artworks to be sold, or the time frame for compensation in order to create an enforceable contract (MP Innovations, Inc. v Atlantic Horizon International, Inc., 72 AD3d 571 [1st Dept 2010]).
The fact that the First Receipt and Second Receipt contain references to the purchase prices of "Large Elephant on Mount Kilamanjaro," is insufficient to create a binding contract between the parties. As previously mentioned, Mr. Beard's work [*4]entitled 965 Elephants is not at issue in this litigation.Although the First Receipt states that the paintings 965 Elephants and "Large Elephant on Mount Kilamanjaro," (which is not a known piece of Mr. Beard's artwork), were to be sold for $80,000, made in $10,000 installments, the Second Receipt states that Mr. Chase should pay $100,000 for the Works (Hogan Aff., Ex. 13). In addition, Mr. Chase admitted that he was to pay $40,000 for the Paradise Lost photograph, bringing the total purchase price to $120,000, which is not reflected in either receipt (Chase Aff., ¶ 32).
Defendants' argument that Ms. White acted as Mr. Beard's agent in negotiating the sale of the Works fails as a matter of law. It is undisputed that Ms. White was serving as an intermediary between him and Mr. Chase (Hogan Aff., ¶ 32).Ms. White cannot be considered an agent of Mr. Beard absent evidence of control (Pensee Assoc. v Quon Indus., 241 AD2d 354, 358 [1st Dept 1997]). As Plaintiffs correctly assert, the fact that Ms. White was not even in the room when the first Agreement was allegedly negotiated and was plainly unaware of the second Agreement negates any element of control (Ex. 10 at 118:10-14)(Hogan Aff., Ex. 10, at 133:7-10).
This Court finds Defendants' argument that the purported Agreements fall within the specially manufactured goods exception unpersuasive (UCC § 2-201[3][a]).[FN1]
Specially manufactured goods are not suitable for sale to others in the ordinary course of business (Capital Knitting Mills, Inc. v Duofold, Inc., 131 AD2d 87 [1st Dept 1987]). Here, it is undisputed that the Defendants were offering the Works for sale, and even sold one of the Works, prior to the entry of the temporary restraining order by this Court.
Regardless, Defendants failed to establish that the payments made to Mr. Beard or Mrs. White were "unequivocally referable" to the sale of the Works, and, therefore, this exception is inapplicable (Anostario v Vicinanzo, 59 NY2d 662, 664 [1983]).
In order to be considered "unequivocally referable," the conduct must be inconsistent with any other explanation (Goottee v Global Credit Servs, LLC, 139 AD3d 551, 558 [1st Dept 2016]). Defendants have failed to point to any course of conduct that is "unequivocally referable" to the Agreements. While Defendants presented evidence that Mr. Chase made five wire transfers to Ms. [*5]White from September 23 to November 15, 2013, they failed to establish that these payments were in connection to the Agreements, particularly because these payments were for over three times the alleged purchase price (Hogan Aff., Ex. F).
In addition, the wire transfers, hotel bills, medical bills, and periodic cash withdrawals purportedly made as payments for the Works could be explained by a variety of reasons. Therefore, the purported sale of the Works does not fall within the specially manufactured goods exception to the statute of frauds.
Further, the Court is unpersuaded by Defendants' assertion that the Agreements are services contracts, exempt from the statute of frauds. Defendants' own witness, Ms. White, testified at her deposition that Mr. Beard and Mr. Chase "negotiated the purchase of the two Beard works" (White Aff., ¶ 18). The service of creating the Works was incidental or collateral to their sale (St. Anne-Nackawic Pulp Co., Ltd. v Research-Cottrell, Inc., 788 FSupp 729 [SDNY 1992])(internal quotations omitted).
As Defendants allege, photographic evidence demonstrates that Beard created the Works mostly prior to the Shoots, which occurred around the time that the Agreements were entered into (Def. Resp. To Pls. Rule 19A, ¶ 8). This contradicts Defendants' argument that the Agreements were a contract for services, as it is illogical for parties to contract for services after the services are already significantly complete.
Since Defendants' defenses fail as a matter of law, Plaintiffs have adequately established their conversion and replevin causes of action. Plaintiffs have a posessory right or interest in the Works, and there is sufficient evidence that Defendants interfered with that right by taking the Works without Plaintiffs' consent, without paying him and subsequently displaying them at the Gallery and offering them for sale (Pappas v Tzolis, 20 NY3d 228, 23 [2012]).
As to Plaintiffs' replevin claim, Plaintiff has successfully established Defendants' unlawful possession of the Works, to which Plaintiffs have a superior posessory right (Nissan Motor Acceptance Corp. v Scialpi, 94 AD3d 1067, 1068 [2d Dept 2012]).
Here, Plaintiffs met their initial burden of demonstrating their entitlement to judgment as a matter of law on their conversion and replevin claims by establishing that Mr. Beard created and held an ownership interest in the Works, which were taken and sold without his knowledge or consent (Id.). In opposition, Defendants failed to raise a triable issue of fact as to Plaintiffs' ownership rights to the Works.
In addition, Plaintiffs have established a justiciable controversy involving a present prejudice to Plaintiffs as a result of Defendants' unauthorized possession of the Works in addition to Defendants' alleged ownership of the Works, entitling them to a declaratory judgment (CPLR § 3001; Touro College v [*6]Novus University Corp., 146 AD3d 679, 680 [1st Dept 2017]). 
This Court has considered Defendants' remaining arguments and finds them to be unpersuasive.
Accordingly, it is hereby
ORDERED that Plaintiffs' motion for partial summary judgment is granted in its entirety; and it is further
ORDERED and DECLARED that Peter Beard is the sole owner of the Works and that he has indefeasible title to and interest in the Works, free and clear of any liens, claims, or encumbrances of any kind; and it is further
ORDERED that the remainder of the action shall continue.
Dated: June 19, 2017
ENTER:
_______________
J.S.C.



Footnotes

Footnote 1:"A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable: (a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement" (UCC § 2-201[3][a]).