AMUSEMENT INDUSTRY, INC. dba
Westland Industries; and Practical
Finance CO., Inc., Plaintiffs,

v.

Moses STERN, aka Mark Stern; Joshua
Safrin; First Republic Group Realty
LLC; Ephraim Frenkel; and Land Title Associates Escrow, Defendants.

No. 07 Civ. 11586(LAK).

United States District Court,
S.D. New York.

March 1, 2010.

Allen Phillip Sragow, Sragow & Sragow, Long Beach, CA, Eugene R. Scheiman, Mark Alan Bloom, Arent Fox LLP, New York, NY, for Plaintiffs.

Stephen R. Stern, Mark W. Geisler, Philip S. Ross, Hoffinger Stern & Ross LLP, New York, NY, Thomas Moss Wood, Nathan D. Adler, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, for Defendants.

## ORDER

LEWIS A. KAPLAN, District Judge.

The motion of defendant Buchanan Ingersoll & Rooney, PC [DI 133], to dismiss Safrin's amended third party complaint, which by agreement of the parties and order of Magistrate Judge Gorenstein, has been made applicable to Safrin's second amended third party complaint, is granted to the extent that Counts II, III, VII, VIE and X are dismissed and otherwise denied, substantially for the reasons stated in Judge Gorenstein's report and recommendation [DI 353] to which no objection has been filed.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

Defendant Joshua Safrin filed a third-party complaint asserting claims against, inter alia, third-party defendants Buchanan, Ingersoll & Rooney, P.C. and Stephen Friedman (collectively, "Buchanan" or "BIR"). *See* Second Amended Third Party Complaint, filed Feb. 9, 2009 (Docket # 203) ("3d-Party Compl."). Buchanan has now moved to dismiss the third-party complaint as against it.[1] For the reasons stated below, the motion to dismiss should be granted in part and denied in part.

## I. *BACKGROUND*

### A. *Law Governing Motions to Dismiss*

A party may move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) where the opposing party's complaint "fail[s] to state a claim upon which relief can be granted." While a court must accept as true all of the allegations contained in a complaint, that principle does not apply to legal conclusions. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'") (citation, internal quotation marks, and brackets omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft,* 129 S.Ct. at 1949, and thus a court's first task is to disregard any conclusory statements in a complaint, *id.* at 1950.

Next, a court must determine if the complaint contains "sufficient factual matter" which, if accepted as true, states a claim that is "plausible on its face." *Id.* at 1949 (citation and internal quotation marks omitted); *accord Port Dock & Stone Corp.*

---

1. *See* Notice of Motion to Dismiss Third Party Complaint by Buchanan Ingersoll & Rooney, PC and Stephen Friedman, filed June 17, 2008 (Docket # 133); Memorandum of Law in Support of Third Party Defendants Buchanan Ingersoll & Rooney, PC and Stephen Friedman's Motion to Dismiss Safrin's Amended Third Party Complaint, filed June 17, 2008 (Docket # 134) ("Buchanan Mem."); Third Party Plaintiff Joshua Safrin's Memorandum of Law in Opposition to Friedman and Buchanan, Ingersoll & Rooney, P.C.'s Motion to Dismiss the Amended Third Party Complaint, filed July 31, 2008 (Docket # 152) ("Safrin Mem."); Declaration of Jonathan D. Lupkin, filed July 31, 2008 (Docket # 153);

Reply Memorandum of Law in Further Support of Third Party Defendants Buchanan Ingersoll & Rooney, PC and Stephen Friedman's Motion to Dismiss Safrin's Amended Third Party Complaint, filed Aug. 22, 2008 (Docket # 168) ("Buchanan Reply Mem."). The parties have agreed, and this Court has ordered, that the motions to dismiss the amended third-party complaint and all related briefing shall apply to Safrin's second amended third-party complaint. *See* Memorandum Endorsed, filed Feb. 13, 2009 (Docket # 204); *see also* Letter from Martin I. Kaminsky, Pollack & Kaminsky, to Hon. Gabriel W. Gorenstein, dated Feb. 12, 2009.

*v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir.2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 129 S.Ct. at 1949 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed.R.Civ.P. 8(a) because it has merely "alleged" but not "show[n] ... that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

If the allegations of a complaint show that the complained-of conduct was "not only compatible with, but indeed was more likely explained by, lawful" conduct, no claim for relief is stated. *Id.* at 1950; *see also id.* at 1951 (allegations in a complaint are rejected where there is an "obvious alternative explanation" for the conduct alleged that is more "likely").

While a court typically examines only the allegations of a pleading on a motion to dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citation omitted).

### B. *Allegations in the Third–Party Complaint*

This case began when plaintiffs Amusement Industry, Inc. and Practical Finance Co., Inc. (collectively, "Amusement") sued a number of defendants, including Safrin, asserting that they were responsible for the plaintiffs' $13 million loss in a real estate transaction. Amusement brought claims against Safrin for fraud, negligent misrepresentation, conversion, conspiracy to commit conversion, and unjust enrichment. *See* First Amended Complaint, filed Mar. 19, 2009 (Docket # 240) ("Compl."), ¶¶ 70–100, 124–32. In his third-party complaint, Safrin alleges the following facts, which we presume to be true on this motion to dismiss. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

On June 29, 2007, third-party defendants Steven Alevy and Friedman—who "was acting, at all times mentioned herein, in his capacity as an attorney and shareholder of [Buchanan]," 3d-Party Compl. ¶ 5—"presented an investment opportunity to Amusement, purportedly on behalf of Safrin and others," although Safrin had not authorized either party to do so, *id.* ¶¶ 26–27. Indeed, while Friedman held himself out as Safrin's representative, "Safrin never retained or otherwise authorized Friedman to speak or act on his behalf in connection with the transactions described in the [underlying] Complaint." *Id.* ¶ 29.

On that same date, Steven Alevy drafted a "letter of intent," which was "signed by [defendant Moses] Stern on behalf of First Republic Corp.," and which "identifies as its parties First Republic Corp. and Westland Industries, the name under which Amusement does business." *Id.* ¶ 30. Safrin was not a party to the letter of intent. *Id.* ¶ 31. That day, Amusement wired $13 million into an escrow account. *Id.* ¶ 33.

Amusement and First Republic agreed to "work in good faith 'to finalize [their agreements]' " during the seven-day period following June 29, 2007. *Id.* ¶ 37. During this period, Amusement "drafted and for-

warded three partnership agreements to Friedman for Safrin, among others, to sign in order 'to complete a transaction.'" *Id.* (emphasis omitted). Nonetheless, "[n]one of these draft agreements called for Safrin's signature." *Id.* ¶ 38.

On July 2, 2007, Alevy e-mailed the letter of intent to Friedman and Stern. *Id.* ¶ 32. On July 6, 2007,

> Plaintiffs, through Friedman: (a) suggested a new Property Portfolio ownership structure; (b) inquired as to whether its $13,000,000.00 contribution to the purchase should be a loan to Stern or to the entity that would be the owner of the Property Portfolio; (c) notified Safrin, among others, that the seven-day period had expired; and (d) noted that there should be about $4,000,000.00 in reserve after the closing. Plaintiffs also instructed Friedman not to authorize the release of the $13,000,000.00 held in escrow.

*Id.* ¶ 40. "Safrin was unaware of these negotiations and communications." *Id.* ¶ 41.

In July 2007, two loan agreements were executed by or on behalf of First Republic Realty LLC with Citigroup, purporting to name Safrin as guarantor. *Id.* ¶ 22. Safrin's signatures on those loan agreements are forgeries. *Id.* ¶ 23. On July 9, 2007, Amusement asked Friedman for a copy of the loan agreements. *Id.* ¶ 44. Friedman did not provide the documents but stated that First Republic Realty LLC "was now the purchasing entity." *Id.*

On July 11, 2007, Friedman provided documents to Amusement, including a promissory note for $13 million signed by Stern, as well as "an Escrow Agreement, and Agreements, purportedly signed by Stern and Safrin, assigning their respective LLC membership interests in First Republic LLC and the underlying LLC ownership structure, and eleven grant deeds constituting the Property Portfolio,

all of which were signed on behalf of First Republic LLC." *Id.* ¶ 50 (citations omitted). "Safrin's signature on the 'Agreement' that purportedly assigns his LLC interests ... is a forgery.... Moreover, Safrin's forged signature, as it appears in the document, is not witnessed, as required by the form itself." *Id.* ¶ 51.

Safrin's claims against Buchanan consist of: (1) indemnification and contribution (Count I); (2) implied contractual indemnification (Count III); (3) "Breach of Duty as Agent/Attorney" (Count V); (4) violation of Safrin's right of privacy under New York Civil Rights Law §§ 50–51 (Count VII); (5) conspiracy to violate New York Civil Rights Law §§ 50–51 (Count IX); (6) violation of the California common law right of privacy/commercial misappropriation (Count VIII); and (7) conspiracy to violate Safrin's right to privacy under California common law (Count X). In addition, Safrin seeks a declaratory judgment (Count II) that:

> (a) no attorney-client or other principal-agency relationship existed between Safrin and Friedman [and/or] BIR ... in connection with the transactions alleged in the Complaint; (b) Friedman [and] BIR ... had no authority, whether actual or apparent, to act on Safrin's behalf in connection with the transactions alleged in the Complaint; and (c) Safrin did not ratify any of the representations or conduct allegedly made or undertaken on his behalf by Friedman [and/or] BIR ... in connection with the transactions alleged in the Complaint.

*Id.* ¶ 83.

## II. *DISCUSSION*

While the claims in this case arise under state law, no party has briefed the issue of choice of law. All parties relied on New York State law in their memoranda of law (with the exception of the California right

to privacy claim, discussed further below), however. In these circumstances, the parties have implicitly consented to having New York law apply and this " 'implied consent ... is sufficient to establish choice of law.' " *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (quoting *Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989)).

We now examine the arguments raised in Buchanan's motion.

### A. *Indemnification (Counts I and III)*

In Count I, Safrin asserts claims for indemnification and contribution, *see* 3d-Party Compl. ¶¶ 77–79, stating that "[t]o the extent that he may be found liable to Plaintiffs for damages ... such damages were caused, in whole or in part, by the wrongful conduct" of Buchanan, *id.* ¶¶ 79.[2] Separately, in Count III, Safrin asserts a claim for "implied indemnification-implied contractual indemnity" in the event that Buchanan is determined to have been Safrin's agent or attorney. *Id.* ¶¶ 84–87. Buchanan contends that Safrin has failed to state a claim for indemnity. *See* Buchanan Mem. at 4–8; Buchanan Reply Mem. at 4–13.

#### 1. *Common Law or "Implied" Indemnity (Count I)*

■ "Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *Mas v. Two Bridges Assocs. by Nat'l Kinney Corp.*, 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990) (citing *McDermott v. City of N.Y.,* 50 N.Y.2d 211, 216–17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)); *accord Hernandez v. GPSDC (N.Y.) Inc.,* 2008 WL 220636, at *7 (S.D.N.Y. Jan. 28, 2008). It is grounded in the "principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled ... to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.' " *Raquet v. Braun,* 90 N.Y. 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (quoting *Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola,* 134 N.Y. 461, 468, 31 N.E. 987 (1892)). Thus, indemnity may be implied "to prevent a result which is regarded as unjust or unsatisfactory" and "is frequently employed in favor of one who is vicariously liable for the tort of another." *Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) (citations and internal quotation marks omitted). While vicarious liability is a common example of a situation that calls for implied indemnification, indemnity is also available in cases where liability is based on strict product liability and breach of warranty. *See, e.g., McDermott,* 50 N.Y.2d at 218–19, 428 N.Y.S.2d 643, 406 N.E.2d 460; *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 242 (2d Cir.2002) ("A state-law claim for indemnity may rest upon (*inter alia*) breach of a quasi-contractual relationship or warranty."). In general terms, indemnity allows a defendant to recover for a loss occasioned solely "by imputation of law," *Mas,* 75 N.Y.2d at 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257, that it would otherwise be forced to bear on its own.

Buchanan argues that Safrin's claim for implied indemnification against it must be dismissed because "Safrin's denial of any contractual relationship between he [sic] and BIR makes it impossible for him to

---

**2.** Buchanan argues that Safrin's contribution claim against it must be dismissed—but only if all the tort claims against Safrin are dismissed. *See* Buchanan Mem. at 9–10. Be-cause Safrin does not allege that these tort claims have been dismissed, Buchanan provides no basis for dismissing Safrin's contribution claim.

allege an implied contractual right to indemnification because there is nothing from which to create any implied obligation running from BIR to Safrin." Buchanan Mem. at 6 (citing 3d-Party Compl. ¶¶ 28, 63, 65, 66, 72, 73).

■ Buchanan's argument must be rejected because Fed.R.Civ.P. 8(d) expressly permits "hypothetical" pleading and the assertion of "inconsistent claims or defenses." *See* Fed.R.Civ.P. 8(d)(2)-(3). Safrin's assertion that there was no relationship between him and Buchanan, *see, e.g.*, 3d-Party Compl. ¶ 3, does not, therefore, bar him from asserting that, should such a relationship be found, Buchanan is obligated to indemnify him, *id.* ¶¶ 85–86. *See, e.g., Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir.1994) ("Under [Rule 8(d) ] of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency.... [T]herefore, we may not construe [the] first claim as an admission against another alternative or inconsistent claim.") (citations omitted); *Padre Shipping, Inc. v. Yong He Shipping*, 553 F.Supp.2d 328, 333 (S.D.N.Y. 2008) ("plaintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe allegations regarding one claim to be an admission against another") (citation omitted); *Ascher v. Target Corp.*, 522 F.Supp.2d 452, 458 (E.D.N.Y.2007) ("the Court cannot construe one claim as an admission against another alternative or inconsistent claim") (citation omitted).

Buchanan responds that in the cases cited by Safrin in which courts "have allowed parties to hypothetically plead 'if-then' allegations, the party asserting the hypothetical facts did not have personal knowledge that the alleged hypothetical facts were false." Buchanan Reply Mem. at 11 (citation omitted). The cases cited by Buchanan, however, do not base their

rulings on the particular knowledge of the pleader. Nor do the Federal Rules of Civil Procedure suggest that the ability to take advantage of hypothetical pleading turns on the knowledge of the pleader. Indeed, cases involving principals and agents—where presumably the alleged principal had ample "personal knowledge" that the alleged hypothetical facts were false—have permitted precisely the sort of claim Safrin makes here. *See, e.g., Clark v. Assocs. Commercial Corp.*, 149 F.R.D. 629, 634 (D.Kan.1993) (permissible "for [defendant] to deny the existence of an agency relationship between it and third-party defendants, while at the same time [claiming] indemnity based upon this relationship"); *see also Headman v. Berman Leasing Co.*, 352 F.Supp. 211, 213 (E.D.Pa. 1972) (permissible to both deny agency and to seek indemnity in the event of recovery).

■ Buchanan argues that indemnity is "inapplicable to the contract claims alleged against Safrin by the Plaintiffs because if Plaintiffs are successful on these claims, then Safrin will necessarily have been found to have breached an agreement with them and that breach cannot be primarily the fault of BIR," Buchanan Mem. at 6–7, and that if Safrin is found liable for the claims of fraud, fraudulent inducement, negligent misrepresentation, and conspiracy, "Safrin will necessarily have been found at fault," *id.* at 7. Buchanan's argument on this point seems to be that in order to be held responsible for any damages to Amusement, Safrin will necessarily have been found to have committed some improper "affirmative act," *id.* at 8, that created Buchanan's apparent authority, and that such an act would itself constitute fault that would bar a claim for indemnity. *See id.* at 8 (Safrin's "negligence in [committing affirmative acts creating apparent authority] in light of his vehement denial

that he retained BIR to represent him and had no attorney client relationship with the firm in connection with the events at issue in this case, bars a claim for implied-in-fact indemnification."). But if a principal commits acts that create an apparent agency relationship and the principal thereby becomes responsible to an outside party for the agent's acts, this does not necessarily mean that the principal is barred from obtaining indemnity. Even if the agent was imbued with *apparent* authority in a third person's eyes, the agent would necessarily know that it could not properly purport to bind the principal without *actual* authority. If the agent acted without actual authority, there is no reason that it should not be held responsible for the principal's liability. *See, e.g., Gleason v. Temple Hill Assocs.*, 159 A.D.2d 682, 683–84, 553 N.Y.S.2d 430 (2d Dep't 1990) (agent with apparent authority must indemnify principal with respect to agent's acts outside the scope of its actual authority). As between a principal who—perhaps unintentionally—creates apparent authority and an agent who acts knowing he has no actual authority, it is only fair that the principle of indemnity would permit the principal to recover from the improperly acting agent.

■ Buchanan argues that Safrin's hypothetical pleading is insufficient because it does not "set forth facts indicating the nature and scope of the relationship between the parties in order that an informed determination relating to any implied obligation may be made." Buchanan Mem. at 6 (arguing that Safrin's pleading must "set forth facts indicating the nature

and scope of the relationship").[3] But Safrin's claim is premised on Buchanan having been found to have acted as Safrin's "agent or attorney." 3d-Party Compl. ¶ 2. As to what unauthorized acts were committed by Buchanan, Safrin's pleading repeatedly references the allegations of the complaint, many of which involve Buchanan's conduct. *See, e.g., id.* ¶¶ 20, 24, 26, 28, 30, 39, 40, 42, 44, 48, 50, 52, 54, 86–87, and the underlying complaint, in turn, alleges in detail the conduct allegedly undertaken by Buchanan purportedly on behalf of Safrin, *see, e.g.*, Compl. ¶¶ 23, 25, 27, 36, 45. This is sufficient to put Buchanan on notice of Safrin's claim that, if Buchanan is found to have been his agent or attorney, that relationship—agent-principal or attorney-client—serves as the basis for Safrin's claim of indemnification.

In its reply brief, Buchanan argues that Safrin has failed to plead the factual basis for how he created apparent authority in Buchanan. *See* Buchanan Reply Mem. at 6–7. But Safrin's entitlement to indemnity should not depend on an examination, at this early stage of this case, of the strength of plaintiff's allegations regarding Buchanan's apparent authority. For purposes of the notice pleading requirements of Fed.R.Civ.P. 8, it is enough that Safrin has referenced Amusement's own allegations on this point and alleged that, in the event Buchanan is found to be his agent, Buchanan made unauthorized representations to plaintiffs on Safrin's behalf.

In sum, Safrin has stated a claim for implied indemnity.

---

**3.** It is hardly clear that the cases cited by Buchanan, Buchanan Mem. at 6, speak to the nature of the allegations that must be contained in a complaint. *Triguero v. Consol. Rail Corp.*, 932 F.2d 95, 101–02 (2d Cir.1991), dismissed an implied contractual indemnification claim because it found there was no "close relationship" alleged between the de-

fendant/third-party plaintiff and the third-party defendant. *Pennisi v. Standard Fruit & S.S. Co.*, 206 A.D.2d 290, 292–93, 614 N.Y.S.2d 519 (1st Dep't 1994), denied a motion for summary judgment because "[t]he nature of the parties' relationship and the degree of supervision and control exercised by each over the plaintiff is unclear at this point."

## 2. *Indemnity Based on a Contractual Relationship (Count III)*

In Count III, Safrin has alleged a separate claim for "implied contractual indemnity." 3d-Party Compl. ¶¶ 84–87. New York courts have looked to a contractual relationship between two parties to determine whether, even without an express indemnity clause in the contract, an existing contractual relationship suggests an implied obligation of indemnity. *See, e.g., Menorah Nursing Home, Inc. v. Zukov,* 153 A.D.2d 13, 24–25, 548 N.Y.S.2d 702 (2d Dep't 1989); *see generally Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 351 (2d Cir.1986) (distinguishing between an "implied contract theory" of indemnity, also known as "implied in fact" indemnity, and "implied in law" indemnity, which is "tort-based") (applying New York law). It is not so clear, however, that this distinction is of any great importance inasmuch as New York courts have spoken about "indemnity" generally as arising from both contractual and "other relationship[s]." *Allstate Ins. Co. v. State,* 152 Misc.2d 869, 871, 579 N.Y.S.2d 308, 310 (N.Y.Ct.Cl.1991) ("Indemnity flows from either a contractual or other relationship between the actual wrongdoer and another, such as that of an employer and employee").[4]

In any event, Safrin does not provide any allegations about the specifics of the contractual relationship between him and Buchanan that would allow the inference that the contractual relationship between Safrin and Buchanan impliedly included an indemnification obligation. *See George v. Marshalls of MA, Inc.,* 61 A.D.3d 925, 930, 878 N.Y.S.2d 143 (2d Dep't 2009) ("The promise to indemnify should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding circumstances"). Given that there are no factual allegations in the third-party complaint on this topic, and given that Safrin is being permitted to proceed with his common-law indemnity claim (that is, Count I) based on the purported principal/agent or attorney/client relationship between Safrin and Buchanan, Count III should be dismissed. *See 17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n,* 259 A.D.2d 75, 84, 693 N.Y.S.2d 554 (1st Dep't 1999) (refusing to permit the addition of a cause of action for implied contractual indemnity against contractor because there was "no distinction between that cause of action and [third-party plaintiff's] original action for common-law indemnity").

## B. *Declaratory Judgment (Count II)*

Safrin seeks a declaratory judgment that:

(a) no attorney-client or other principal-agency relationship existed between Safrin and Friedman [and/or] BIR ... in

---

**4.** Confusingly, the concept of indemnity is itself based on the notion that, even in the absence of a contractual relationship between the parties, equity may imply a "contract to indemnify." *Pilewski v. Solymosy,* 266 A.D.2d 83, 85, 698 N.Y.S.2d 660 (1st Dep't 1999); *see, e.g., Oliver Chevrolet Inc. v. Mobil Oil Corp.,* 249 A.D.2d 793, 795, 671 N.Y.S.2d 850 (3d Dep't 1998) ("indemnification claims arise from an implied contract between the party that has discharged an obligation ... and one who, as the true wrongdoer, has the primary duty to do so"); *see also Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) (indemnity "arises out of a contract which may be express or may be implied in law"). Because an implied contract to indemnify has been referred to as indemnity that is "implied in law," *id.,* it is presumably different from "implied in fact" contractual indemnity in which a previously-existing contractual relationship is interpreted as including an implied indemnity obligation. We view "implied in law" indemnity as being subsumed in the "common law" indemnity described in the previous section.

connection with the transactions alleged in the Complaint; (b) Friedman [and] BIR . . . had no authority, whether actual or apparent, to act on Safrin's behalf in connection with the transactions alleged in the Complaint; and (c) Safrin did not ratify any of the representations or conduct allegedly made or undertaken on his behalf by Friedman [and/or] BIR . . . in connection with the transactions alleged in the Complaint.

3d–Party Compl. ¶ 83.

■ The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. In order to constitute an "actual controversy," the disagreement between the parties "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Jenkins v. United States*, 386 F.3d 415, 417–18 (2d Cir.2004).

■■ Even where an actual controversy has been established, a court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment. In making such a determination, a court must consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir.2005) (citation omitted). In addition, a court may consider "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use

of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir.2003).

Buchanan contends that Safrin's claim seeking a declaratory judgment should be dismissed because there is "no threat of impending litigation" in light of the fact that "the threat of litigation between Safrin and BIR has been realized and hence there is no uncertainty with respect to the rights of the parties which should be resolved by a declaratory judgment" inasmuch as "the question on which Safrin seeks a declaratory judgment will be resolved by the resolution of the other claims alleged." Buchanan Mem. at 10–11.

■ Safrin's primary response to this argument is to assert that "because a lawsuit has, in fact, been commenced against Safrin, there is, definitionally, 'an actual case or controversy' before the Court." Safrin Mem. at 21. But this argument fails to address the many factors that affect a court's discretion in issuing a declaratory judgment. The fact that a lawsuit has been filed that will necessarily settle the issues for which the declaratory judgment is sought suggests that the declaratory judgment will serve "no useful purpose." *See, e.g., Intellectual Capital Partner v. Inst. Credit Partners LLC*, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) ("declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim") (citations omitted); *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.*, 2009 WL 577916, at *11 (S.D.N.Y. Mar. 2, 2009) ("The declaratory judgment Plaintiffs seek would serve neither of the[ ] . . . objectives [of the Declaratory Judgment Act].

Because this Court has already analyzed the parties' rights and obligations under the [contracts] in connection with Plaintiffs' breach of contract claims, a declaratory judgment on the same issues would be superfluous.") (citations, internal quotation marks, and bracketing omitted); *Camofi Master LDC v. College P'ship, Inc.*, 452 F.Supp.2d 462, 480 (S.D.N.Y.2006) ("Because the declaratory judgment [defendant] seeks is duplicative of the adjudication of its breach of contract claim, it serves [no useful purpose].") ; *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F.Supp.2d 231, 249–50 (S.D.N.Y.2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action."). Nor will it serve to "offer relief from uncertainty" since the litigation on the main claims will necessarily offer that relief. Finally, there is a "better or more effective remedy" than a declaratory judgment action-specifically, the underlying litigation itself. Thus, there appears to be no purpose to the request for declaratory relief. In a similar vein, courts have held that where a counterclaim seeking a declaratory judgment is "merely a 'mirror image' of the complaint, the counterclaim serves no purpose and may be dismissed." *Arista Records LLC v. Usenet.com., Inc.*, 2008 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008) (citing *Interscope Records v. Kimmel*, 2007 WL 1756383, at *2 (N.D.N.Y. June 18, 2007)).

Safrin also argues that he may need a declaratory judgment because other parties "may choose to claim over against Safrin" in this litigation. Safrin Mem. at 22. This vague assertion is insufficient to meet the "actual controversy" requirement, however. And, to the extent that any claims in this litigation rely on claims as to Safrin's relationship with Buchanan, the question of that relationship will necessarily be decided as part of the adjudication of those claims.

In sum, the claim for a declaratory judgment should be dismissed.

### C. Breach of Fiduciary Duty (Count V)

Buchanan argues that, "because Safrin alleges that no attorney-client or principal-agent relationship existed between him and BIR," and because "[i]n the absence of any relationship, no fiduciary duty exists," Safrin has not stated a claim for breach of fiduciary duty. Buchanan Mem. at 11–12 (citing *Ernest Lawrence Group v. Mktg. Ams., Inc.*, 2005 WL 2811781, at *8–9 (S.D.N.Y. Oct. 27, 2005); *Tal v. Superior Vending, LLC*, 20 A.D.3d 520, 799 N.Y.S.2d 532 (2d Dep't 2005)). Buchanan contends that New York law requires a plaintiff asserting breach of fiduciary duty to "plead or prove facts demonstrating a 'relationship approaching privity.'" *Id.*

■ As previously noted, Fed.R.Civ.P. 8(d) permits hypothetical pleading. Here, Safrin has alleged that "*[i]f* it is determined that Friedman/BIR were acting, in any way, as Safrin's agents or attorneys, then Friedman/BIR owed certain duties to Safrin," including a fiduciary duty, 3d-Party Compl. ¶ 94 (emphasis added), and Buchanan breached those duties, *id.* ¶ 95. An agent-principal or attorney-client relationship would be sufficient to create a fiduciary duty. *See, e.g., Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 416, 729 N.Y.S.2d 425, 754 N.E.2d 184 (2001) (agents, as fiduciaries, "must act in accordance with the highest and truest principles of morality"); *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 91 N.Y.2d 30, 37, 666 N.Y.S.2d 985, 689 N.E.2d 879 (1997) (attorney is fiduciary with duty of "openness and conscien-

tious disclosure"); *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 9, 865 N.Y.S.2d 14 (1st Dep't 2008) ("relationship of client and counsel is one of 'unique fiduciary reliance' "); *Pensee Assocs., Ltd. v. Quon Indus., Ltd.*, 241 A.D.2d 354, 359, 660 N.Y.S.2d 563 (1st Dep't 1997) ("Agency is a fiduciary relationship created as a result of conduct by parties manifesting that the principal party is willing to allow the other party, upon such other party's consent, to act for it subject to the principal's control and within the limits of the authority thus conferred."). Thus, Safrin's breach of duty claims should not be dismissed.

D. *California Right of Privacy (Counts VIII and X)*

Safrin alleges that Buchanan violated his right to privacy under California common law, *see* 3d-Party Compl. ¶¶ 114–21, and that Buchanan and others conspired to violate that right, *id.* ¶¶ 127–31. Buchanan argues that these claims must be dismissed because "New York law, and not California law, applies to Safrin's claims." Buchanan Mem. at 15. Safrin responds that he is alleging two separate right-to-privacy claims—one for the use of his name in New York, subject to New York Civil Rights Law §§ 50 and 51, and one for the "transmission of documents containing his name to plaintiffs in California and the use of Safrin's name in connection with negotiations with plaintiffs in California," subject to California common law. Safrin Mem. at 27.

A federal court exercising diversity jurisdiction must apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *O'Connor v. Lee–Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir.), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 638, 639, 58 L.Ed.2d 696 (1978). "New York's choice

of law rules for torts apply to the right to privacy claim, and these rules direct the Court to the substantive law of the state with the most significant relationship to the violation of the right of privacy." *Mathews v. ABC Television, Inc.*, 1989 WL 107640, at *4 (S.D.N.Y. Sept. 11, 1989); *accord Cox v. Abrams*, 1997 WL 251532, at *9 (S.D.N.Y. May 14, 1997). "New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation. The greater interest is determined by an evaluation of the 'facts or contacts which ... relate to the purpose of the particular law in conflict.' " *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994) (citations omitted). Generally, a New York court will first determine whether the purpose of the law at issue is to regulate conduct or to allocate loss. *See, e.g., Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir.1999) (applying New York law); *Padula*, 84 N.Y.2d at 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001. Where the purpose is to regulate conduct, the locus of the tort usually governs the choice of law analysis. *Lee*, 166 F.3d at 545; *Padula*, 84 N.Y.2d at 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001; *K.T. v. Dash*, 37 A.D.3d 107, 111, 827 N.Y.S.2d 112 (1st Dep't 2006). "The locus of a tort is generally defined as the place of the injury." *Devore v. Pfizer Inc.*, 58 A.D.3d 138, 141, 867 N.Y.S.2d 425 (1st Dep't 2008) (citing *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)). However, "[e]ven where a law is conduct-regulating, we do not blindly follow the lex loci rule. Rather, we must still decide whether the foreign jurisdiction has the greater interest in addressing the alleged conduct." *K.T.*, 37 A.D.3d at 113, 827 N.Y.S.2d 112. "New York has a strong interest in seeing that its aggrieved citizens obtain redress for

wrongs committed upon them by other citizens of New York, regardless of where the act took place." *Id.* at 114, 827 N.Y.S.2d 112.

■ Here, both Safrin and Friedman are residents of New York; Buchanan is organized in Pennsylvania and "maintains offices for the practice of law" in New York. 3d-Party Compl. ¶¶ 4–6. All the other defendants who allegedly participated in the conspiracy to violate Safrin's right to privacy are New York residents. *Id.* ¶¶ 7–10. While Safrin has not articulated the precise nature of the injury resulting from the violation of his right to privacy, it is unclear why the place of his injuries is located in California. The only articulated connection to California is the fact that Safrin's name was used in negotiations with plaintiffs and in documents sent from New York to California. However, most of the communications with plaintiffs in California "occurred in telephone calls ... and via email that was transmitted between New York and California," *id.* ¶ 117. In other words, the communications that Safrin argues were directed to California emanated from New York. Thus, there is no reason to conclude the "locus of the tort" is California.

Even if it could be said that the locus of the tort was in California, New York has a greater interest in the conduct at issue in this case, inasmuch as New York residents allegedly conspired and misused the name and reputation of another New York resident. *See Mathews,* 1989 WL 107640, at *4 (where defendants resided in New York and the decision to utilize plaintiff's likeness in a video was made in New York, the court would apply New York law even though the video was broadcast outside New York and plaintiff's reputation may have been affected worldwide). Indeed, it is difficult to imagine what interest California would have in the outcome of this privacy claim. Because New York has the most significant relationship to Safrin's claims regarding the use of his name, Safrin's claims for a right to privacy under California law, and for conspiracy to violate his right to privacy under California law, should be dismissed.

### E. *New York Civil Rights Law §§ 50–51 (Counts VII and IX)*

Safrin also alleges that Buchanan and others violated his right of privacy under New York Civil Rights Law §§ 50 and 51, *see* 3d-Party Compl. ¶¶ 104–13, and that Buchanan and others conspired to violate that right, *id.* ¶¶ 122–26. Section 50 is a criminal statute and thus is not relevant here. Section 51 of the New York Civil Rights Law provides:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained ... [may] sue and recover damages for any injuries sustained by reason of such use....

N.Y. Civil Rights Law § 51. "Use for 'advertising purposes' and use 'for the purposes of trade' are separate and distinct statutory concepts and violations." *Beverley v. Choices Women's Med. Ctr., Inc.,* 78 N.Y.2d 745, 751, 579 N.Y.S.2d 637, 587 N.E.2d 275 (1991) (citing *Flores v. Mosler Safe Co.,* 7 N.Y.2d 276, 284, 196 N.Y.S.2d 975, 164 N.E.2d 853 (1959)); *accord Delan v. CBS, Inc.,* 91 A.D.2d 255, 258, 458 N.Y.S.2d 608 (2d Dep't 1983). Courts have defined use "for the purposes of trade" as use which "would draw trade to the firm" or "use for the purpose of making profit." *Zoll v. Jordache Enters. Inc.,* 2003 WL 1964054, at *16 (S.D.N.Y. Apr. 24, 2003) (citing *Kane v. Orange County Publ'ns,* 232 A.D.2d 526, 527, 649 N.Y.S.2d 23 (2d Dep't 1996); *Delan,* 91 A.D.2d at 259, 458 N.Y.S.2d 608); *accord Rall v. Hellman,* 284 A.D.2d 113, 114–15, 726

N.Y.S.2d 629 (1st Dep't 2001) ("the relevant inquiry in the context of this case is whether" the improper use of the name "attracted customers to defendant and/or helped defendant make a profit"); *Griffin v. Law Firm of Harris, Beach, Wilcox, Rubin and Levey,* 112 A.D.2d 514, 515–16, 490 N.Y.S.2d 919 (3d Dep't 1985) (use is for the "purposes of trade" if it "attracted customers to the user and/or helped the user to make a profit") (citations omitted); *see also Zoll,* 2003 WL 1964054, at *17 (court must determine, "considering the circumstances, extent, and character of the use," whether "plaintiff's image was used to advertise, to solicit patronage (customers), and/or to help defendant make a profit or increase trade or sales"). "The court should focus on whether the use of plaintiff's image was 'sufficiently related to a commercial end' or 'mercantile rewards.'" *Zoll,* 2003 WL 1964054, at *16 (citation omitted).

Buchanan argues that the case of *Griffin v. Law Firm of Harris, Beach, Wilcox, Rubin & Levey,* 126 Misc.2d 209, 213, 481 N.Y.S.2d 963 (Sup.Ct.1984), *aff'd,* (112 A.D.2d 514, 490 N.Y.S.2d 919 (3d Dep't 1985)), shows that there can be no section 51 claim here. *See* Buchanan Reply Mem. at 15. In *Griffin,* the plaintiff alleged that the defendants, a group of hotel owners, used his name as a plaintiff in a lawsuit as part of a "scheme" to protect their financial interests by preventing the competition that would result from the construction of a new hotel in the area, "calculating that plaintiff's reputation as a representative of the poor would rally the community" against the proposed construction. 112 A.D.2d at 515–16, 490 N.Y.S.2d 919. The court in *Griffin* dismissed the complaint, holding that the "mercantile rewards for naming plaintiff in that suit were far too remote and speculative" *Id.* at 516, 490 N.Y.S.2d 919. The situation in *Griffin*— where the defendants used the plaintiff's name in a lawsuit hoping to rally the community so that the community would express opposition to the construction, and presumably also hoping that the government would then yield to public pressure and withdraw its support of the project—is far more attenuated than the situation alleged by Safrin, however. Here, Safrin alleges that the conspiring defendants used his name in negotiations with parties from whom they sought financing, and that they did so because Safrin's reputation in the real estate industry would entice those parties to invest in the real estate transaction.

Safrin's claim more closely resembles the claim in *Coleman v. Ted's Auto Sales, Inc.,* 33 Misc.2d 739, 227 N.Y.S.2d 693 (Sup.Ct.), *aff'd,* 17 A.D.2d 827, 233 N.Y.S.2d 239 (2d Dep't 1962), where the plaintiff alleged that "the defendants used [his] name, reputation and known widespread legal talent in the automotive field for the purpose of conveying to those ... from whom the defendants sought credit, the notion that the plaintiff was financially connected with the firm." *Id.* at 741, 227 N.Y.S.2d 693. The court denied the motion to dismiss in *Coleman,* holding that the transmission of plaintiff's name to a third party, who prepared a financial report and circulated that report to others in the automotive industry, fit within the statute in light of the plaintiff's allegations that the defendants used his name "with the view of inducing others, on the strength of plaintiff's reputation, to impart credit to them" and that "[t]he granting of credit to the defendants ... enabled them to carry on business or trade." *Id.*

Similarly, in *Radio Today, Inc. v. Westwood One, Inc.,* 684 F.Supp. 68 (S.D.N.Y. 1988), the plaintiff alleged that the defendant mislabeled the packaging on an album to falsely reflect that the plaintiff had collaborated on the album in order to mislead radio stations into accepting the al-

bums on the basis of the plaintiff's reputation. *See id.* at 69–70, 74. The court denied the motion to dismiss, noting that "[t]he thrust of plaintiff['s] allegations is that defendant misused [plaintiff's] name for the purpose of commercial exploitation, which ... is the harm that the statute is meant to prevent," and that "the alleged commercial purpose sought to be achieved through the mislabelling [was not] too remote or speculative to be actionable." *Id.* at 75.

■ Buchanan does, however, make a powerful argument for dismissal of the substantive section 51 claim on the ground that Safrin has failed to allege that Buchanan itself—as opposed to other defendants—profited from the use of Safrin's name, *id.* at 13–14; Buchanan Reply Mem. at 14–16, noting that Buchanan "was not even a party to the transaction," Buchanan Mem. at 14. Buchanan is correct in this regard inasmuch as Safrin alleges only that Buchanan used Safrin's name to allow Stern and First Republic group to obtain financing from Citigroup and Amusement. The third-party complaint simply gives no indication of how Buchanan itself benefitted from this financing. Case law reflects that section 51 penalizes the misappropriation of a plaintiff's name for "a defendant's benefit." *Farrow v. Allstate Ins. Co.*, 53 A.D.3d 563, 862 N.Y.S.2d 92 (2d Dep't 2008); *accord Cohen v. Herbal Concepts, Inc.*, 63 N.Y.2d 379, 383, 482 N.Y.S.2d 457, 472 N.E.2d 307 (1984) ("The statute protects against the appropriation of a plaintiff's name or likeness for defendants' benefit."). Safrin points to no New York case in which a party was held to have violated section 51 merely for having been the instrumentality by which a name was improperly used. Accordingly, the substantive claim against Buchanan under section 51 (Count VII) must fail.

■ The conspiracy claim, however (Count IX), presents a different issue. To state a claim of civil conspiracy, a plaintiff must allege the primary tort and four additional elements: "(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the corrupt agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1267 (S.D.N.Y.1991) (citing *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir.1986)). In other words, for Safrin's conspiracy claim to succeed, he need not allege that each member of the conspiracy benefitted from the misuse of Safrin's name but only that some member benefitted. Granting Safrin's third-party complaint the reasonable inferences to which it is due on this motion to dismiss, the third-party complaint plausibly raises the inference that there was an agreement between Buchanan and Stern to improperly use Safrin's name, that numerous acts were taken in furtherance of this agreement and were done so intentionally, and that First Republic Group LLC, as the purchasers of the property, benefitted from the receipt of the investments that were obtained through the improper use of Safrin's name.

Indeed, Buchanan makes no specific argument that the four elements of civil conspiracy are not pled with respect to the section 51 claim, *see* Buchanan Mem. at 16–only that there was no section 51 claim with respect to Buchanan itself, *id.* at 13–14. And case law is clear that "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." *Briarpatch Ltd., L.P. v. Pate*, 81 F.Supp.2d 509, 516 (S.D.N.Y.2000) (citations omitted); *see also Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986) (alle-

gations of conspiracy permitted to "connect the actions of separate defendants with an otherwise actionable tort"). Thus, Safrin need not allege that Buchanan directly profited from the unauthorized use of his name, but need only allege that he participated in the conspiracy under which such profit was realized by one of the members of the conspiracy. Accordingly, the claim for conspiracy to violate New York Civil Rights Law § 51 (Count IX) should not be dismissed.

### F. *Punitive Damages*

Safrin seeks punitive damages against Buchanan on his claims of breach of fiduciary duty, violation of his right to privacy, and conspiracy to violate his right to privacy. *See* 3d-Party Compl. at 25–26. Buchanan seeks dismissal of Safrin's demand for punitive damages on the breach of fiduciary duty claim. *See* Buchanan Mem. at 17–18; Buchanan Reply Mem. at 18–19 & n. 2. Buchanan argues that "where a party seeks punitive damages in connection with a tort claim that has its genesis in a contractual relationship, the alleged egregious conduct 'must be part of a pattern directed at the public.'" Buchanan Mem. at 17 (citation omitted). However, none of the cases cited by Buchanan deal with punitive damages sought for a breach of fiduciary duty. *See N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315–16, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (alleging "unlawful" and "fraudulent" conduct based upon breach of contract); *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613–14, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994) (breach of the implied covenant of good faith and fair dealing); *Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, 2008 WL 1710910, at *5–6 (S.D.N.Y. Apr. 10, 2008) (tortious interference with contract "aris[ing] from a breach of contract"); *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 262–64 (S.D.N.Y.2005) (breach of contract and fraudulent inducement).

"The limitation of an award for punitive damages to conduct directed at the general public applies only in breach of contract cases, not in tort cases for breach of fiduciary duty." *Don Buchwald & Assocs., Inc. v. Rich*, 281 A.D.2d 329, 330, 723 N.Y.S.2d 8 (1st Dep't 2001) (citation omitted); *accord Giblin v. Murphy*, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54, 532 N.E.2d 1282 (1988). "To sustain a claim for punitive damages in tort, one of the following must be shown: intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." *Don Buchwald & Assocs.*, 281 A.D.2d at 330, 723 N.Y.S.2d 8 (citation omitted). Buchanan has made no argument that Safrin's pleadings fail to satisfy this lesser standard.

Buchanan separately contends that Safrin's pleadings must satisfy a higher standard because he is making a punitive damages claim against attorneys. *See* Buchanan Mem. at 18 (arguing plaintiff must "allege facts demonstrating that [the attorneys'] conduct 'was so outrageous as to evince a high degree of moral turpitude and showing such wanton dishonesty as to imply criminal indifference to civil obligations'") (citations omitted). The cases relied upon by Buchanan do not support this proposition, however, but merely state that the quoted standard is the one to be applied where punitive damages are sought for legal malpractice. *See Rosenkrantz v. Steinberg*, 13 A.D.3d 88, 88, 786 N.Y.S.2d 35 (1st Dep't 2004); *Robbins v. Harris Beach & Wilcox, LLP*, 291 A.D.2d 797, 799, 737 N.Y.S.2d 486 (4th Dep't 2002); *Walker v. Stroh*, 192 A.D.2d 775, 776, 596 N.Y.S.2d 213 (3d Dep't 1993). Safrin has not asserted a claim of legal

malpractice, and Buchanan and Friedman are not entitled to special protection merely because they are attorneys.

 Of course, Safrin's allegation that "Friedman/BIR's conduct was so outrageous as to evince a high degree of moral turpitude and show such wanton dishonesty as to imply criminal indifference to civil obligations," 3d-Party Compl. ¶ 96, is conclusory and cannot alone support a claim for punitive damages. However, Safrin also pleads facts to support his claim, alleging not only that Buchanan exceeded the scope of its authority, but also that it "used Safrin's name and identity . . . (without his knowledge or consent) for [its] own purposes and material benefit," and "improperly represented that [it was] authorized to act on Safrin's behalf to consummate the transactions alleged in the Complaint." *Id.* ¶ 95. Buchanan offers no explanation why it should be insufficient for a punitive damages claim that an agent or attorney used its client's name and reputation to negotiate and complete a significant real estate transaction without the knowledge or consent of its client, resulting in multiple multi-million dollar claims against the client. Safrin has pled sufficient facts to satisfy the requirement that he show "intentional or deliberate wrong-

doing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." *Don Buchwald & Assocs.*, 281 A.D.2d at 330, 723 N.Y.S.2d 8. Thus, Buchanan's motion to dismiss the demand for punitive damages on the breach of duty claim should be denied.[5]

### III. CONCLUSION

For the foregoing reasons, Buchanan's motion to dismiss the Second Amended Third Party Complaint as against it (Docket # 133) should be granted in part and denied in part. Specifically, Safrin's claims against Buchanan for declaratory judgment (Count II), for indemnity based on an implied contract (Count III), for the non-conspiracy claim under the New York Civil Rights Law (Count VII), and for relief under California's right to privacy law (Counts VIII and X) should be dismissed. The remaining claims should not be dismissed.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

---

**5.** While Safrin does not raise the point, it is not even clear that there is a requirement that a complaint seeking punitive damages must plead specific facts that would support an award of such damages. A motion to dismiss is addressed to a "claim"-not to a form of damages. There is "no independent cause of action for punitive damages under New York law." *Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs., Inc.*, 871 F.Supp. 709, 731–32 (S.D.N.Y.1995) (citation omitted). Thus, in rejecting attempts to dismiss demands for punitive damages, courts have not undertaken a detailed analysis of whether the factual allegations of the pleading support such a demand. *See, e.g., Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F.Supp.2d 298, 324 (N.D.N.Y.2007); *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 2006

WL 278138, at *15 (S.D.N.Y. Feb. 2, 2006); *N.Y. Islanders Hockey Club, LLP v. Comerica Bank–Texas*, 71 F.Supp.2d 108, 120–21 (E.D.N.Y.1999). Buchanan's motion would fare no better as a motion to strike pursuant to Fed.R.Civ.P. 12(f). *See Martinez v. Ketchum Adver. Co.*, 865 F.Supp. 166, 167–68 (S.D.N.Y.1994) (plaintiff's demand for punitive damages may be stricken only if the law does not "authorize[ ]" their award); *accord Burrell v. State Farm & Cas. Co.*, 226 F.Supp.2d 427, 440 (S.D.N.Y.2002) (motion to "strike" punitive damages addresses "the relief to which the plaintiffs are entitled rather than the sufficiency of the claims in the pleadings, and it would be premature to address these issues before these claims have been decided").

Procedure, the parties have fourteen (14) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).